**PUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

No. 14-4211

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

v.

AARON EUGENE SHELL,

Defendant - Appellant.

Appeal from the United States District Court for the Western District of North Carolina, at Statesville. Richard L. Voorhees, District Judge. (5:13-cr-00054-RLV-DSC-1)

Argued: March 25, 2015     Decided: June 12, 2015

Before WILKINSON and HARRIS, Circuit Judges, and DAVIS, Senior Circuit Judge.

Vacated and remanded by published opinion. Judge Harris wrote the majority opinion, in which Senior Judge Davis joined. Judge Wilkinson wrote a dissenting opinion.

**ARGUED:** Joshua B. Carpenter, FEDERAL DEFENDERS OF WESTERN NORTH CAROLINA, INC., Asheville, North Carolina, for Appellant. William Michael Miller, OFFICE OF THE UNITED STATES ATTORNEY, Charlotte, North Carolina, for Appellee. **ON BRIEF:** Ross Hall Richardson, Acting Executive Director, FEDERAL DEFENDERS OF WESTERN NORTH CAROLINA, INC., Charlotte, North Carolina, for Appellant. Anne M. Tompkins, United States Attorney, OFFICE OF THE UNITED STATES ATTORNEY, Charlotte, North Carolina, for Appellee.

PAMELA HARRIS, Circuit Judge:

Defendant-Appellant Aaron Eugene Shell ("Shell") pleaded guilty to being a felon in possession of a firearm, in violation of 18 U.S.C. § 922(g) (2012). At sentencing, the district court applied an enhanced base offense level on the ground that Shell's prior North Carolina conviction for second-degree rape constituted a crime of violence under the U.S. Sentencing Guidelines Manual ("U.S.S.G." or the "Guidelines") § 2K2.1(a)(4)(A) (2014). The district court also applied a two-level enhancement for obstruction of justice pursuant to Guidelines § 3C1.2, concluding that Shell recklessly created a substantial risk of death or serious bodily injury to another person in the course of fleeing from a law enforcement officer. On appeal, Shell challenges the district court's application of both enhancements. For the reasons that follow, we vacate Shell's sentence and remand for resentencing.

**I.**

On December 27, 2012, Shell was driving southbound on Highway 321 in Caldwell County, North Carolina. North Carolina Trooper Christopher Hodges ("Hodges"), traveling northbound, saw Shell speeding and turned around to follow him. By the time Hodges was able to complete the turn, Shell had disappeared from

2

sight. But in short order, Hodges discovered that Shell's vehicle had veered off the road and down an embankment.

As he fled the scene of the accident, Shell discarded a bag behind a tree. Officers searched the bag and found a loaded semiautomatic pistol. Several days later, Shell voluntarily submitted to a police interview and admitted that he was the driver of the vehicle and was in possession of the firearm.

Shell was charged with one count of being a felon in possession of a firearm, in violation of 18 U.S.C. § 922(g), and pleaded guilty. The presentence report ("PSR") recommended raising Shell's base offense level from 14 to 20 under U.S.S.G. § 2K2.1(a)(4)(A), on the ground that Shell committed the instant offense after a prior felony conviction for a "crime of violence" – here, a North Carolina conviction for second-degree rape. The PSR also recommended a two-level enhancement for obstruction of justice, pursuant to U.S.S.G. § 3C1.2, because Shell's reckless driving in the course of fleeing from a law enforcement officer created a substantial risk of death or serious bodily injury to another person. Applying those provisions, the PSR calculated a Guidelines range of 57 to 71 months' imprisonment.

Shell objected to both enhancements. At sentencing, the district court overruled Shell's objections. As to reckless endangerment under § 3C1.2, the district court credited a

3

witness who testified that Shell sped, skidded, and almost hit her vehicle, and thus concluded that Shell created a substantial risk of death in the course of fleeing from a law enforcement officer. The court also held that Shell's prior second-degree rape conviction qualified as a "crime of violence" under § 2K2.1.

The district court adopted the PSR and sentenced Shell to 57 months' imprisonment and three years of supervised release. Shell appeals, challenging the district court's application of both enhancements.

**II.**

**A.**

Under the Guidelines, a defendant convicted of being a felon in possession of a firearm receives an enhanced base offense level of 20 if he or she has committed a prior "crime of violence," as defined in Guidelines § 4B1.2. U.S.S.G. § 2K2.1 cmt. n.1. Shell argues that the district court erred in characterizing his North Carolina conviction for second-degree rape as a crime of violence because the state statute does not require the use of physical force, and may instead be violated through constructive force or the absence of legally valid consent. We review de novo that question of law. United States v. Montes-Flores, 736 F.3d 357, 363 (4th Cir. 2013).

4

The parties agree that in considering whether Shell's North Carolina conviction constitutes a crime of violence, we must apply what is called the "categorical approach," which "focus[es] on the elements, rather than the facts," of the prior offense. United States v. Carthorne, 726 F.3d 503, 511 (4th Cir. 2013) (quoting Descamps v. United States, 133 S. Ct. 2276, 2285 (2013)). What matters for the categorical approach is how the law defines the offense generically, and not the particulars of how an individual might have committed the offense on a given occasion. Begay v. United States, 553 U.S. 137, 141 (2008); United States v. Seay, 553 F.3d 732, 737 (4th Cir. 2009).

The question we must decide, then, is whether the full range of conduct covered by North Carolina's second-degree rape statute, "including the most innocent conduct," would qualify as a crime of violence for purposes of the § 4B1.2 enhancement. United States v. Diaz-Ibarra, 522 F.3d 343, 348, 352 (4th Cir. 2008). If it is "evident from the statutory definition of the state crime that some violations of the statute are 'crimes of violence' and others are not," then the state offense is deemed "categorically overbroad" and § 4B1.2 does not apply. United States v. Rangel-Castaneda, 709 F.3d 373, 376 (4th Cir. 2013) (quoting Diaz-Ibarra, 522 F.3d at 348). Whether North Carolina second-degree rape categorically qualifies as a crime of violence under this approach is a

5

question of first impression for our court, and for the reasons that follow, we agree with Shell that it does not.

**B.**

In comparing the elements of North Carolina second-degree rape to § 4B1.2's definition of "crime of violence," we begin with the North Carolina statute and the state precedent construing it. North Carolina's second-degree rape statute consists of two separate offenses, providing that:

> (a) A person is guilty of rape in the second degree if the person engages in vaginal intercourse with another person:
>
>> (1) By force and against the will of the other person; or
>>
>> (2) Who is mentally disabled, mentally incapacitated, or physically helpless, and the person performing the act knows or should reasonably know the other person is mentally disabled, mentally incapacitated, or physically helpless.

N.C. Gen. Stat. § 14-27.3 (West 2004). Because the records of Shell's conviction do not specify which subsection of the statute formed the basis for his conviction, the parties agree, that conviction may be treated as a crime of violence only if both subsections so qualify.

The first subsection is applicable where "sexual intercourse is effectuated by force and against the victim's will." State v. Atkins, 666 S.E.2d 809, 812 (N.C. Ct. App. 2008). Under North Carolina law, that force requirement may be

6

satisfied either by "actual, physical force or by constructive force in the form of fear, fright, or coercion." State v. Etheridge, 352 S.E.2d 673, 680 (N.C. 1987). Constructive force may be demonstrated by proof of compulsion or threats of force, and also will be inferred from certain relationships - such as a parent-child relationship – that are deemed inherently coercive. See id. at 680–82; State v. Morrison, 380 S.E.2d 608, 611–12 (N.C. Ct. App. 1989).

The second subsection, by contrast, does not require the state to prove either force or the absence of consent. Atkins, 666 S.E.2d at 812. Instead, it applies to victims who are deemed by law incapable of validly consenting to intercourse or resisting sexual acts, State v. Williams, 698 S.E.2d 542, 544–45 (N.C. Ct. App. 2010), and it is used by the state in cases where there is factual but legally insufficient consent, see State v. Ramey, No. COA10-1197, 2011 WL 3276720, at *4–5 (N.C. Ct. App. Aug. 2, 2011) (unpublished) (conviction for second-degree rape of mentally disabled victim who initiated intercourse). In this sense, it is analogous to the age element of North Carolina's statutory rape law: the fact of consent is not a defense where the victim is unable to give legally valid consent by virtue of age or by virtue of mental disability. See Atkins, 666 S.E.2d at 812 (comparing second-degree and statutory rape and quoting legislative history:  "In second degree rape,

7

we are adding persons who are mentally defective, mentally incapacitated, or physically helpless. This is basically a statutory rape section . . . ."); see also State v. Banks, 766 S.E.2d 334, 339 (N.C. 2014) (statutory and second-degree rape "separately punish the act of intercourse with a victim who, because of her age, is unable to consent to the act, and the act of intercourse with a victim who, because of a mental disability or mental incapacity, is unable to consent to the act").[1]

## C.

Our other point of comparison is the phrase "crime of violence," as used in the Sentencing Guidelines.[2] As will become important in this case, different guideline provisions describe

---

[1] To the extent our dissenting colleague suggests that lack of legally valid consent cannot alone sustain a conviction for North Carolina second-degree rape, as opposed to statutory rape, we must respectfully disagree. See Williams, 698 S.E.2d at 544-45. Nor is the prospect of prosecution in cases of factual but legally insufficient consent so fanciful that we may overlook it under the categorical approach. See Ramey, 2011 WL 3276720, at *4-5. Indeed, at his sentencing hearing, Shell adduced testimony that his own conviction under the statute was for engaging in sexual intercourse with his stepsister by marriage when both were young and with factual consent. The particulars of Shell's offense, of course, do not control the analysis under the categorical approach we apply. But they may help to illustrate the practical scope of the North Carolina statute at issue.

[2] As is customary, we rely as well on cases construing the phrase "violent felony" under the Armed Career Criminal Act, "because the two terms have been defined in a manner that is substantively identical." Montes-Flores, 736 F.3d at 363 (internal quotation marks omitted).

8

"crime of violence" differently. But Shell's sentence was enhanced for a prior crime of violence under U.S.S.G. § 2K2.1, which defines that term by reference to the career-offender guideline, U.S.S.G. § 4B1.2. U.S.S.G. § 2K2.1 cmt. n.1. Section 4B1.2, in turn, defines a crime of violence as:

> (a) . . . any offense under federal or state law, punishable by imprisonment for a term exceeding one year, that—
>
>> (1) has as an element the use, attempted use, or threatened use of physical force against the person of another, or
>>
>> (2) is burglary of a dwelling, arson, or extortion, involves use of explosives, or otherwise involves conduct that presents a serious potential risk of physical injury to another.

U.S.S.G. § 4B1.2(a). The commentary elaborates, in relevant part:

> "Crime of violence" includes murder, manslaughter, kidnapping, aggravated assault, <u>forcible sex offenses</u>, robbery, arson, extortion, extortionate extension of credit, and burglary of a dwelling.

U.S.S.G. § 4B1.2 cmt. n.1 (emphasis added).

In its argument, the government skips past the text of § 4B1.2 to focus on its commentary, and in particular the phrase "forcible sex offenses." But it is the text, of course, that takes precedence, see <u>Stinson v. United States</u>, 508 U.S. 36, 43 (1993) (where commentary is inconsistent with text, text controls), and so that is where we begin. And like two other

9

circuit courts, as well as our own court in an unpublished opinion, we conclude that offenses that may be committed without physical force and predicated instead on the absence of legally valid consent – as under the North Carolina second-degree rape statute – are not categorically crimes of violence under either clause of § 4B1.2.  See United States v. Wray, 776 F.3d 1182, 1187–91 (10th Cir. 2015) (conviction for sexual assault with a 10-year age difference not categorically a crime of violence under § 4B1.2); United States v. Wynn, 579 F.3d 567, 572–75 (6th Cir. 2009) (sexual battery based on coercive nature of relationship not categorically a crime of violence under § 4B1.2); United States v. Leshen, 453 F. App'x 408, 412–16 (4th Cir. 2011) (unpublished) (third-degree rape and aggravated sexual assault based on age of victim not categorically crimes of violence under § 4B1.2).

We can dispense relatively quickly with the first clause of the career-offender guideline – the so-called "force clause" - which covers crimes that have "as an element the use, attempted use, or threatened use of physical force against the person of another."  U.S.S.G. § 4B1.2(a)(1).  For these purposes, the Supreme Court held in Johnson v. United States, "physical force" means "violent force - that is, force capable of causing physical pain or injury to another person."  559 U.S. 133, 140 (2010); see also United States v. Aparicio-Soria, 740 F.3d 152,

10

154–55 (4th Cir. 2014) (en banc) (applying Johnson). We think it clear that the second subsection of North Carolina's second-degree rape statute, which does not require the state to prove force at all and may instead be violated if there is legally insufficient consent, does not meet this "violent force" standard, and indeed, the government does not argue otherwise.[3] Nor do we believe that North Carolina's second-degree rape offense qualifies as a crime of violence under § 4B1.2's "residual clause" or "otherwise clause," covering any crime that "is burglary of a dwelling, arson, or extortion, involves use of explosives, or otherwise involves conduct that presents a serious potential risk of physical injury to another." U.S.S.G. § 4B1.2(a)(2).[4] Sex offenses are not among the enumerated

---

[3] As the dissent notes, the North Carolina Supreme Court has held that for purposes of the state's own sentencing laws, felony rape necessarily is a crime of violence. See State v. Holden, 450 S.E.2d 878, 884 (N.C. 1994). But the meaning of "physical force" under § 4B1.2(a)(1) is a question of federal law, not state law, and in answering that question, we "are not bound by a state court's interpretation of a similar – or even identical – state statute." Johnson, 559 U.S. at 138. Instead, we follow Johnson and other Supreme Court and Fourth Circuit precedent that bears on the relevant federal provision before us.

[4] The dissent chides us for giving too much attention to the "straw man of the 'residual clause'" at the expense of § 4B1.2's force clause. Post at 9. But this is an unusual case in that the government ignores both clauses equally, and that makes it hard for us to say which is the straw man. On the assumption that the government's argument must be anchored at least implicitly in one of § 4B1.2's textual clauses, and without

11

crimes. And the final clause, the Supreme Court instructs, does not reach _every_ crime that "otherwise . . . presents a serious potential risk of physical injury," U.S.S.G. § 4B1.2(a)(2), but only those "that are roughly similar [] in kind" to the listed examples – involving conduct that is "purposeful, violent and aggressive" – as well as similar in the "degree of risk" of physical injury they pose. _Begay_, 553 U.S. at 142-45.[5] That standard, we have held already, is not met by sex offenses that do not require the use of physical force and may be predicated instead on the legal insufficiency of purported consent. _See United States v. Thornton_, 554 F.3d 443, 446–49 (4th Cir. 2009) (conviction for statutory rape does not fall within residual clause); _see also_ _Leshen_, 453 F. App'x at 413–14 (same).

That precedent governs here. Like the statutory rape offense considered in _Thornton_, the second subsection of North Carolina's statute may be violated without the threat or use of physical force, and on the legal presumption that the victim is

---

further guidance from the government as to which, we feel ourselves obliged to address both.

[5] Although the Supreme Court refined the _Begay_ approach in _Sykes v. United States_, 131 S. Ct. 2267, 2275-76 (2011), we continue to require that an offense be similar to the listed examples both in kind and in degree of risk before it can qualify as a crime of violence under the residual clause. _See United States v. Martin_, 753 F.3d 485, 490 (4th Cir. 2014).

12

unable to consent. See Atkins, 666 S.E.2d at 812. That does not mean, of course, that the crime is not serious; but it does mean, we held in Thornton, that unlike the crimes enumerated in the career-offender guideline, it "does not support an inference that any or all instances of the offense are violent and aggressive." 554 F.3d at 449; see also Leshen, 453 F. App'x at 414; Wynn, 579 F.3d at 574. Similarly, we do not doubt that sex offenses committed without physical force and against vulnerable victims can present physical as well as psychological risks, in the form of sexually transmitted diseases or health concerns attendant to pregnancy. But we have concluded that those risks are not comparable to the physical risks generated by the crimes listed in § 4B1.2(a)(2), both because they are more attenuated and because they are not "violent in nature." Thornton, 554 F.3d at 449; see Leshen, 453 F. App'x at 414.

At issue in Thornton (and Leshen, as well) was a statute criminalizing adult sexual contact with minors, whereas North Carolina's statute criminalizes sexual intercourse with those who are mentally disabled or incapacitated. But nothing about that distinction renders the logic of Thornton any less applicable here. Like statutory rape laws, North Carolina's second-degree rape statute does not require the state to prove force or the absence of consent in fact, Atkins, 666 S.E.2d at 812, and there is at least a "realistic probability," Diaz-

13

*Ibarra*, 522 F.3d at 348, that the statute would apply in situations in which a victim is presumed unable to give legally valid consent, *Williams*, 698 S.E.2d at 544–45; *Ramey*, 2011 WL 3276720, at *4-5. Those are precisely the features that led us to conclude in *Thornton* that statutory rape is not a crime of violence under § 4B1.2. *See* 554 F.3d at 448 ("[A] victim's lack of ability to give legal consent" does not make statutory rape "inherently violent and aggressive."); *see also* *Leshen*, 453 F. App'x at 414. In applying § 4B1.2's definition of crime of violence, we see no grounds for distinguishing between sexual intercourse with a victim whose consent is legally invalid because he or she is fourteen years old, and sexual intercourse with an adult victim whose consent is legally invalid because he or she has the mental capacity of a fourteen-year-old. Indeed, as noted above, North Carolina law itself draws precisely this parallel, treating the second subsection of its second-degree rape statute as analogous to its statutory rape law. *See* *Atkins*, 666 S.E.2d at 812 ("This is basically a statutory rape section . . . ."); *Banks*, 766 S.E.2d at 339.[6] *Thornton* controls

_____

[6] The dissent argues that offenses under the second-degree rape statute necessarily are "violent" in a way that statutory rape is not because the second subsection of that statute limits its reach to defendants who know – or do not know, but should – that a victim is mentally disabled or otherwise falls within the protected category. We cannot agree. A defendant's "guilty knowledge" that a victim is mentally disabled, post at 13 – or

14

on this question, and we are bound to find that North Carolina's second-degree rape statute is not categorically a crime of violence under § 4B1.2(a)(2)'s residual clause.[7]

---

his failure to discern mental disability when it is found that he should, see Williams, 698 S.E.2d at 546-47 (despite his own mental impairments, defendant "reasonably should have discovered" victim's mental disability) – of course may bear on culpability, and, again, we do not doubt the gravity of offenses under North Carolina's statute. But that is a distinct question from whether all such offenses are "inherently violent and aggressive," Thornton, 554 F.3d at 448, and as we have held, sex offenses committed against victims who give factual (but legally invalid) consent are not "inherently violent" in that sense, id. Moreover, because North Carolina second-degree rape, like statutory rape, presumes invalid any consent, it may be committed even when a defendant lacks the intent to override the will of a factually consenting victim, and is in that way akin to a strict liability, recklessness, or negligence offense. See Sykes, 131 S. Ct. at 2275-76; Begay, 553 U.S. at 144-45; Thornton, 554 F.3d at 448.

[7] Our conclusion here is limited to the second subsection of North Carolina's statute. We should note, however, that even if the second subsection could be reconciled with the text of § 4B1.2, there would remain the question of the first. And because that subsection may be violated through force that is constructive rather than physical, it, too, raises significant issues under § 4B1.2. After Johnson, 559 U.S. at 140 ("physical force" under § 4B1.2(a)(1) means "violent force"), we doubt that a statute requiring only constructive force in the form of an inherently coercive relationship, like the first subsection of the North Carolina law, can be brought within the force clause. See United States v. Vann, 660 F.3d 771, 779 n.2 (4th Cir. 2011) (en banc) (King, J., concurring). And there is room to question whether an offense under the first subsection that is predicated on an inherently coercive relationship could fall within the residual clause, as sufficiently similar in kind and degree of risk of physical injury to § 4B1.2(a)(2)'s listed examples. See Thornton, 554 F.3d at 448 (rejecting government argument that sex offense involves constructive force and therefore falls within residual clause); see also Leshen, 453 F. App'x at 415

We turn now to the government's argument on appeal. The government does not contest, at least directly, our holding that a North Carolina second-degree rape conviction does not qualify categorically as a crime of violence under either clause of § 4B1.2's definition. Instead, the government rests its argument entirely on the commentary to § 4B1.2, which lists "forcible sex offense[]" as an example of a crime of violence. U.S.S.G. § 4B1.2 cmt. n.1. More specifically, the government contends that because sex offenses resting on legally insufficient consent constitute "forcible sex offenses" under a different section of the Guidelines – Guidelines § 2L1.2 – they must be crimes of violence under the commentary to § 4B1.2, as well. Two other circuit courts have rejected precisely that argument, see Wynn, 579 F.3d at 574–75 (Sixth Circuit); Wray, 776 F.3d at 1187–88 (Tenth Circuit); see also Leshen, 453 F. App'x at 415–16 (Fourth Circuit, unpublished), and we join them now.

---

(constructive force "no longer satisfies either prong" of § 4B1.2's definition of crime of violence). But we need not resolve those issues today. As we have explained, North Carolina's second-degree rape statute can qualify categorically as a crime of violence only if both its subsections are covered by § 4B1.2, and so our determination that the second subsection reaches offenses that fall outside the terms of § 4B1.2 is enough to dispose of this case.

16

Section 2L1.2 of the Guidelines enhances the base offense level for certain immigration violations where the defendant has committed a prior felony "crime of violence" or misdemeanor "crimes of violence." U.S.S.G. § 2L1.2(b)(1)(A), (E). The text of § 2L1.2 does not define crime of violence and, unlike the provision under which Shell was sentenced, it does not incorporate by reference § 4B1.2's two-clause definition of crime of violence. Instead, § 2L1.2 includes commentary listing "forcible sex offense[]" as an example of a crime of violence. Id. at cmt. n.1(B)(iii).

In United States v. Chacon, we applied § 2L1.2 to a subsection of a Maryland statute much like the second subsection of North Carolina's statute, criminalizing intercourse with a person who is mentally defective, mentally incapacitated, or physically helpless. 533 F.3d 250, 255 (4th Cir. 2008). At the time, § 2L1.2's commentary provided:

> "Crime of violence" means any of the following offenses under federal, state, or local law: murder, manslaughter, kidnapping, aggravated assault, forcible sex offenses, statutory rape, sexual abuse of a minor, robbery, arson, extortion, extortionate extension of credit, burglary of a dwelling, or any offense under federal, state, or local law that has as an element the use, attempted use, or threatened use of physical force against the person of another.

U.S.S.G. § 2L1.2 cmt. n.1(B)(iii) (2006) (emphases added). We held, first, that the Maryland offense did not have "as an element the use, attempted use, or threatened use of physical

17

force," and so did not fall within § 2L1.2's "force clause." Chacon, 533 F.3d at 255-56.[8] We went on to find, however, that it nevertheless qualified as a "forcible sex offense[]" within the meaning of § 2L1.2. Id. at 256–58. In the absence of a textual definition, we relied on the "ordinary, contemporary" meaning of "forcible" and concluded that it reaches not only physical force but also compulsion effectuated through "power" or "pressure," id. at 257, as when a rape is "accomplished by taking advantage" of someone who cannot give legal consent, id. at 258. And extending "forcible sex offenses" to statutes that do not require physical force and instead presume the inability to consent, we held, is consistent with § 2L1.2's commentary as a whole, which expressly enumerates the similar offenses of "statutory rape" and "sexual abuse of a minor." See id.

It is Chacon's "common meaning" analysis on which the government relies most heavily here. The government argues that once we have established the common meaning of the phrase forcible sex offenses, that common meaning stays the same, traveling with the term wherever it appears in the Guidelines.

[8] The dissent relies heavily on Chacon in arguing that North Carolina second-degree rape falls within § 4B1.2, and presumably its force clause. But if Chacon's construction of the § 2L1.2 commentary directly governed this case, as the dissent urges, then surely this part of Chacon's holding would govern, as well, and eliminate § 4B1.2's force clause as a textual basis for the dissent's position.

18

Appellee's Br. 25 ("It is difficult to imagine how . . . examining the common meaning of the phrase forcible sex offense [] would lead to a different result simply based on where the enumerated offense appears in the guidelines."). We appreciate the logic of this position, but, as in Leshen, 453 F. App'x at 414-16, we must disagree.

As the Supreme Court recently reminded us, when it comes to statutory construction, context matters. See Yates v. United States, 135 S. Ct. 1074, 1082 (2015) ("In law as in life, [] the same words, placed in different contexts, sometimes mean different things."). Section 4B1.2's career-offender guideline, at issue here, and § 2L1.2's immigration guideline, construed in Chacon, are different provisions, with significantly different texts and structures. Accordingly, while we of course do not question Chacon's conclusion that offenses presuming the inability to consent qualify as forcible sex offenses under § 2L1.2's commentary, we reach a different result under § 4B1.2.

Both provisions, as the government says, list forcible sex offenses in their commentaries. But critically, while § 2L1.2 defines crime of violence entirely through that commentary, § 4B1.2 provides a separate two-part definition of crime of violence in its text, with the commentary serving only to amplify that definition, and any inconsistency between the two resolved in favor of the text, Stinson, 508 U.S. at 43. So in

19

interpreting "forcible sex offenses" in § 4B1.2's commentary, we do not write on a blank slate; instead, we have a carefully reticulated definition of crime of violence to which we must adhere. See Leshen, 453 F. App'x at 415 (under § 4B1.2, "'[f]orcible sex offenses' does not have freestanding definitional power," but must instead be linked to a prong of the textual definition of crime of violence); see also United States v. Benkahla, 530 F.3d 300, 312 (4th Cir. 2008) (recognizing courts' "duty to harmonize Guidelines and commentary"). And as discussed above, that textual definition comes to us glossed by Supreme Court and Fourth Circuit precedent that precludes its application to offenses committed without "violent" force and predicated on the legal invalidity of consent. Chacon, on the other hand, interpreted "forcible sex offenses" as a freestanding phrase, without the constraints imposed by § 4B1.2's text, and so had the leeway to canvas outside sources in search of ordinary meaning. 533 F.3d at 257 ("When a word is not defined by statute, we normally construe it in accord with its ordinary or natural meaning." (quoting Smith v. United States, 508 U.S. 223, 228 (1993))). Those are markedly different interpretive enterprises, driven by the different structures of the provisions, and it should be no surprise that we end up in different places.

Moreover, the full text of the two commentaries themselves strongly suggests a broader reading of the term "crime of violence" under the immigration guideline at issue in Chacon than under the career-offender guideline before us today. As we explained in Chacon, the commentary to § 2L1.2 includes not only "forcible sex offenses" but also other offenses that do not require physical force, such as statutory rape and sexual abuse of a minor, in its list of enumerated crimes of violence. 533 F.3d at 258 (citing U.S.S.G. § 2L1.2 cmt. n.1(B)(iii)). Section 4B1.2's commentary, on the other hand, does not list statutory rape or sexual abuse of a minor, but only offenses that plainly involve physical force, such as murder and aggravated assault. U.S.S.G. § 4B1.2 cmt. n.1. On its face, the commentary to the immigration guideline sweeps further and "expressly cover[s] more sex crimes" than the career-offender commentary. Wynn, 579 F.3d at 575; see Leshen, 453 F. App'x at 415–16. Reading "forcible sex offenses" to include offenses committed without physical force and predicated on legally invalid consent makes sense under § 2L1.2's commentary in a way it would not under § 4B1.2's commentary.

Finally, we think it is clear that the Sentencing Commission intended this result. First, the Commission chose to include multiple and different definitions of "crime of violence" in the Guidelines. Had it wanted that term to have

21

the same scope each time it appeared, then the obvious solution would have been to provide one uniform definition, applicable throughout. Instead, the Commission set out different "crime of violence" enhancements for different underlying crimes. The felon-in-possession guideline under which Shell was sentenced, § 2K2.1, by cross-referencing § 4B1.2's definition, provides for an enhancement if Shell is a "career offender" – the "kind of person who might deliberately point the gun and pull the trigger." Begay, 553 U.S. at 146. If the Commission had wanted to enhance felon-in-possession sentences for a broader range of crimes of violence, including misdemeanor crimes, then it simply could have cross-referenced § 2L1.2, instead. See Wray, 776 F.3d at 1188.

Second, in 2008 and after we decided Chacon, the Sentencing Commission amended the commentary to § 2L1.2's immigration guideline, adding a parenthetical: "forcible sex offenses (including where consent to the conduct is not given or is not legally valid, such as where consent to the conduct is involuntary, incompetent, or coerced) . . . ." U.S.S.G. § 2L1.2 cmt. n.1(B)(iii) (emphasis added). At the same time, the Commission left § 4B1.2 intact, explaining that its purpose was to "clarif[y] the scope of the term 'forcible sex offense' as that term is used in the definition of 'crime of violence' in § 2L1.1." U.S. Sentencing Guidelines Manual app. C, vol. III,

22

amend. 722, at 302 (2011) (emphases added). "[T]he logical conclusion that we must draw is that the Sentencing Commission did not intend for 'forcible sex offenses' under § 4B1.2 to be defined the same way as 'forcible sex offenses' under § 2L1.2." Wynn, 579 F.3d at 575; see Wray, 776 F.3d at 1188 (citing maxim of expressio unius est exclusio alterius and concluding that the express inclusion of invalid-consent offenses in § 2L1.2 "suggests, at a minimum," that those offenses are not covered by § 4B1.2); Leshen, 453 F. App'x at 415–16 (relying on Commission's decision to amend § 2L1.2 but not § 4B1.2).

Following the reasoning of the Sixth and Tenth Circuits, we hold that Shell's prior conviction for North Carolina second-degree rape is not categorically a crime of violence under § 4B1.2. Our decision should not be understood to minimize in any way the seriousness of the offenses proscribed by the North Carolina statute or the importance of the state's interest in protecting the most vulnerable of victims. But whether the full range of conduct covered by that state statute constitutes a crime of violence under § 4B1.2, as construed both by our court and the Supreme Court, is a different question, which we are obliged to answer in the negative. Because the district court erred in characterizing Shell's prior conviction as a crime of violence and thereby enhancing Shell's base offense level for

23

illegally possessing a firearm, we vacate Shell's sentence and remand for resentencing.

## III.

The district court also enhanced Shell's sentence under Guidelines § 3C1.2, for "recklessly creat[ing] a substantial risk of death or serious bodily injury to another person in the course of fleeing from a law enforcement officer." Shell concedes on appeal that he drove recklessly during the incident leading to his arrest, but argues that the enhancement does not apply because he was not aware that he was being pursued by a law enforcement officer. We evaluate that legal claim de novo and review relevant factual findings by the district court for clear error. United States v. Carter, 601 F.3d 252, 254 (4th Cir. 2010).

## A.

Our court has not addressed whether the § 3C1.2 enhancement applies if the defendant was unaware that he was being pursued by an officer. But every circuit to consider the question has concluded that the enhancement is not warranted where an officer is following a defendant but the defendant does not know that the officer is in pursuit, and is driving recklessly for some other reason. See United States v. Martikainen, 640 F.3d 1191, 1193–94 (11th Cir. 2011) (per curiam); United States v. Moore,

24

242 F.3d 1080, 1082 (8th Cir. 2001); United States v. Hayes, 49 F.3d 178, 183–84 (6th Cir. 1995). At argument, the government conceded that this is the correct reading of § 3C1.2. We agree, and now adopt that reading, joining our sister circuits in holding that the § 3C1.2 enhancement does not apply where a defendant was unaware that he was being pursued by a law enforcement officer.

This interpretation of § 3C1.2 comports with the Sentencing Commission's reason for promulgating it. See U.S. Sentencing Guidelines Manual app. C, vol. I, amend. 347, at 196–99 (2008). The provision is a derivative of Guidelines § 3C1.1, the obstruction-of-justice enhancement, which targets defendants who engage in conduct to mislead authorities or otherwise interfere with the disposition of criminal charges. See id. at 196. The Commission found that "reckless endangerment during flight is sufficiently different from other forms" of obstruction of justice that it warranted a separate enhancement, and § 3C1.2 is expressly made applicable to resisting arrest. Id. at 199. Those origins make clear, we believe, that § 3C1.2 is intended to capture "behavior that could be viewed as an obstruction of justice," and thus requires that a defendant be aware that he or she is fleeing from a law enforcement officer. Hayes, 49 F.3d at 183.

**B.**

At sentencing in this case, the parties contested both whether Shell recklessly created a risk of injury and – despite the absence of circuit precedent – whether Shell knew that he was being pursued by the police. As to reckless endangerment, the government relied principally on the testimony of Nicole Smith, who described "screeching tires" and a "black car coming sideways" that "missed [her] by about two inches." J.A. 44-45. Shell sought to rebut that testimony primarily through the absence of skid marks on the road.

The case as to Shell's knowledge of police pursuit was complicated by the fact that Shell already was speeding at the time Hodges encountered him while traveling in the opposite direction, and that Shell was no longer within Hodges's sight once Hodges activated his siren and turned around to follow Shell. Shell argued that he was unaware that Hodges had decided to pursue him, and pointed for support to witness testimony that Shell had expressed concern when a bystander to his accident called the police – concern that would have been beside the point, Shell argued, had he believed that the police already were in pursuit. The government, for its part, pointed to Shell's flight from the scene of the accident and his admission that he had seen Hodges at some point, though it was unclear whether before or after Hodges activated his siren. According

26

to the government, Shell's concern about the call to the police after his accident could be explained by Shell's belief that he had eluded Hodges successfully up until that point.

In imposing the § 3C1.2 enhancement at sentencing, the district court made the following finding:

> The court credits the testimony of Ms. Smith as to the perception she had at the time of the approach of the black Mercedes to her car which she described as being sideways in the roadway and making substantial skidding noises and that it missed her car by approximately two inches. And that testimony is fortified by the fact that no – people don't tend to forget that sort of thing. [An inconsistent detail in Smith's testimony] is not critical to the analysis under U.S. Sentencing Guidelines 3C1.2. Defendant did create a substantial risk of death or serious bodily injury to her in the course of fleeing from a law enforcement officer.

J.A. 58–59. The final sentence, incorporating the ultimate finding, quotes the language of § 3C1.2, in determining that Shell "created a substantial risk of death or serious bodily injury," and did so "in the course of fleeing from a law enforcement officer." U.S.S.G. § 3C1.2. But because the district court did not have the benefit of the ruling we announce today, it had no occasion to make a separate finding that Shell was aware that he was being pursued by Hodges. And given the preceding context, which focuses exclusively on the separate question of whether Shell recklessly endangered Smith, we cannot be certain that the district court in fact did make such a finding. Accordingly, we remand on this issue, as well,

27

so that the district court may apply our newly announced understanding of § 3C1.2 to this case and clarify whether Shell knew that he was being pursued by law enforcement.

**IV.**

For the foregoing reasons, we vacate the district court's judgment and remand for resentencing consistent with this opinion.

VACATED AND REMANDED

WILKINSON, Circuit Judge, dissenting:

North Carolina's second-degree rape statute punishes predatory acts committed against society's most vulnerable individuals. To violate the contested portion of this statute, one must have taken advantage of a mentally or physically defenseless person to engage in sexual intercourse -- all the while knowing of the victim's impaired condition. N.C. Gen. Stat. § 14-27.3(a)(2). This law protects people considered incapable of volitional acts from such callous conduct.

The majority, however, asks us to accept a disquieting proposition: that a defendant who "engages in vaginal intercourse with another person . . . [w]ho is mentally disabled, mentally incapacitated, or physically helpless," with knowledge of that vulnerability, has somehow not committed a forcible sex offense. Id. How can that be? A proper reading of the law confirms the common intuition about the nature of this crime. It inherently involves the kind of force that is emblematic of a "crime of violence" under the relevant provision of the United States Sentencing Guidelines. U.S.S.G. § 4B1.2(a)(1) & cmt. n.1. Both this court and North Carolina's courts have specifically recognized the forcible nature of these sorts of acts, and rightly so. I do not understand how the knowing, forcible sexual subjugation of helpless human beings

29

fails to qualify as a crime of violence. With all respect for my friends in the majority, I dissent.[1]

## I.

Under the Guidelines provisions for firearms offenses, a defendant who previously sustained a felony conviction for a "crime of violence" is subject to a heightened base offense level. U.S.S.G. § 2K2.1(a)(4)(A). A "crime of violence" may refer to any felony that "has as an element the use, attempted use, or threatened use of physical force against the person of another." Id. § 4B1.2(a)(1); see id. § 2K2.1 cmt. n.1 (cross-referencing the provision for career offenders). As the Guidelines commentary explains, the term "crime of violence" also covers a number of enumerated offenses, including "murder, manslaughter, kidnapping, aggravated assault, forcible sex offenses, robbery, arson, extortion, extortionate extension of credit, and burglary of a dwelling." Id. § 4B1.2 cmt. n.1; see id. § 2K2.1 cmt. n.1. This list of crimes by the Sentencing Commission is "authoritative." Stinson v. United States, 508

---

[1] I agree with the majority that Shell was required to know, for the purposes of an enhancement under U.S.S.G. § 3C1.2, that he was being pursued by a law enforcement officer. While I think the district court's discussion has already incorporated the fact of such knowledge, I have no objection to remanding for a further finding on the point.

U.S. 36, 38 (1993).  The term "crime of violence" thus expressly

encompasses forcible sex offenses.


A.

Was Shell's prior crime a forcible sex offense?  We begin

with the state statute under which he was convicted.[2]  Our charge

is to determine the range of actions that North Carolina would

realistically classify as second-degree rape.  This is a

practical exercise, not a dreamy one about every conceivable

scenario to which the statute might apply.  See United States v.

Diaz-Ibarra, 522 F.3d 343, 348 (4th Cir. 2008) (requiring "'a

realistic probability, not a theoretical possibility,' that the

state would apply its statute to conduct that falls outside the

---

[2]  Of course, the meaning of a federal provision, be it
statutory or regulatory or Sentencing Guideline, is a federal
question.  See Johnson v. United States, 559 U.S. 133, 138
(2010).  But the elements of a predicate state offense are
obviously a question of state law, see id., and determining
those elements is obviously a critical step here:  our express
charge is to compare the elements of the predicate state offense
with the elements of the "generic" crime, see Descamps v. United
States, 133 S. Ct. 2276, 2281 (2013).  In fact, in construing
this North Carolina statute, we are bound by the interpretations
and decisions of the Supreme Court of North Carolina.  See
Johnson, 559 U.S. at 138; United States v. Aparicio-Soria, 740
F.3d 152, 154 (4th Cir. 2014) (en banc).  No federal court "has
any authority to place a construction on a state statute
different from the one rendered by the highest court of the
State."  Johnson v. Fankell, 520 U.S. 911, 916 (1997).
Examining North Carolina's case law is an essential part of the
inquiry before us.

31

definition of 'crime of violence'" (quoting <u>Gonzales v. Duenas-Alvarez</u>, 549 U.S. 183, 193 (2007))).

North Carolina defines the felony of second-degree rape as follows:

> (a) A person is guilty of rape in the second degree if the person engages in vaginal intercourse with another person:
>
>> (1) By force and against the will of the other person; or
>>
>> (2) Who is mentally disabled, mentally incapacitated, or physically helpless, and the person performing the act knows or should reasonably know the other person is mentally disabled, mentally incapacitated, or physically helpless.

N.C. Gen. Stat. § 14-27.3(a)(1)-(2). Another state provision, in turn, defines each of the three mental or physical conditions identified in the second-degree rape statute:

> (1) "Mentally disabled" means (i) a victim who suffers from mental retardation, or (ii) a victim who suffers from a mental disorder, either of which temporarily or permanently renders the victim substantially incapable of appraising the nature of his or her conduct, or of resisting the act of vaginal intercourse or a sexual act, or of communicating unwillingness to submit to the act of vaginal intercourse or a sexual act.
>
> (2) "Mentally incapacitated" means a victim who due to any act committed upon the victim is rendered substantially incapable of either appraising the nature of his or her conduct, or resisting the act of vaginal intercourse or a sexual act.
>
> (3) "Physically helpless" means (i) a victim who is unconscious; or (ii) a victim who is physically unable to resist an act of vaginal intercourse or a sexual act or communicate unwillingness to submit to an act of vaginal intercourse or a sexual act.

32

Id. § 14-27.1(1)-(3).  The import of these provisions is plain. The victims under this North Carolina law cannot comprehend the situation or resist the aggressor's sexual advances.  In one way or another, these persons are helpless.

North Carolina's second-degree rape statute does not suffer from vagueness.  It covers a specific and limited universe of conduct.  And each disjunctive variant under the statute entails some form of force.  The record of Shell's conviction does not specify whether he was convicted under subsection (a)(1) or (a)(2).  See J.A. 62, 119-20.

The majority could scarcely argue that subsection (a)(1) -- which criminalizes sex "[b]y force and against the will of the other person," N.C. Gen. Stat. § 14-27.3(a)(1) -- falls short of a crime of violence.  The forcible nature of this crime is self-evident.  See U.S.S.G. § 4B1.2(a)(1) & cmt. n.1.  Shell's only possible refuge lies in subsection (a)(2) of the North Carolina statute.  But raping a mentally disabled, mentally incapacitated, or physically helpless person is a forcible sex offense and a crime of violence -- so much so that only our esteemed profession could complicate the inquiry.


B.

In addressing the nature of this North Carolina predicate offense, I must first acknowledge the validity of the majority's

33

concerns. It is important not to let predicate crimes of violence metastasize. I agree with the majority that it is unfair to tag defendants with predicate crimes of violence when a state statute is in reality capable of many nonviolent applications. Notwithstanding this, I think the majority is quite wrong to expand the whole concept of nonforcible or nonviolent rape. Even apart from the cognitive jolt delivered by such terms, North Carolina's statute is limited in all kinds of ways that the majority has failed both to acknowledge and to appreciate.

Second-degree rape in North Carolina involves the three basic elements of (1) "vaginal intercourse," (2) "force," and (3) "lack of consent." State v. Smith, 626 S.E.2d 258, 261 (N.C. 2006); see N.C. Gen. Stat. § 14-27.3(a)(1)-(2). The critical issue in the present case is force. The Supreme Court of North Carolina's binding case law interpreting this state statute is exceptionally clear. See United States v. Aparicio-Soria, 740 F.3d 152, 154 (4th Cir. 2014) (en banc). The Guidelines require "forcible sex offenses." Second-degree rape of any kind in North Carolina requires an element of force. Force may assume various legal labels in different cases -- actual, constructive, implied -- but, under any name, it is still exactly that: force.

34

The history of North Carolina's laws against rape confirms that force is an indispensable element of the offense. North Carolina's rape statutes "essentially codify the common law of rape." State v. Moorman, 358 S.E.2d 502, 506 (N.C. 1987). The common law "implied in law the elements of force and lack of consent," with the result that the crime of rape was "complete upon the mere showing of sexual intercourse with a person who is asleep, unconscious, or otherwise incapacitated." Id. at 505. Under the modern second-degree rape statute, "it makes no difference whether the indictment alleges that the vaginal intercourse was by force and against the victim's will," as in § 14-27.3(a)(1), "or whether it alleges merely the vaginal intercourse with an incapacitated victim," as in § 14-27.3(a)(2). Id. at 506 (emphasis added). In the instances covered by subsection (a)(2), "sexual intercourse with the victim is ipso facto rape because the force and lack of consent are implied in law." Id. As a legal matter, the threshold force required for a conviction under either subsection is the same.

The Supreme Court of North Carolina has spoken with utmost clarity about the nature of crimes of rape in that state. In the context of North Carolina's own sentencing laws, the state's highest court has stated plainly, "[W]e reject the notion of any felony which may properly be deemed 'non-violent rape.'" State v. Holden, 450 S.E.2d 878, 884 (N.C. 1994) (emphasis added)

35

(discussing N.C. Gen. Stat. § 15A-2000(e)(3)). In North Carolina, "rape is a felony which has as an element the use or threat of violence to the person." Id. at 883. Indeed, even "the crime of attempted rape always involves at least a 'threat of violence.'" Id. at 884.

North Carolina's highest court has specifically rejected a claim very much like the one endorsed by today's majority. In Holden, the defendant argued that his prior conviction for attempted second-degree rape did not necessarily constitute a crime of violence under North Carolina law, because the conviction could have involved sex with a person who was mentally disabled, mentally incapacitated, or physically helpless. N.C. Gen. Stat. § 14-27.3(a)(2). But the court firmly disagreed. Holden, 450 S.E.2d at 883-84.

The key to the Holden court's ruling was the presence of force, and indeed violence, in any instance of rape. Whether the victim refuses to consent, as in subsection (a)(1), or whether the victim cannot consent because of a mental or physical impairment, as in subsection (a)(2), the analysis is the same. Id. at 884-85. Under North Carolina law, "the force inherent to having sexual intercourse with a person who is deemed by law to be unable to consent is sufficient to amount to 'violence.'" Id. at 884 (emphasis added). In interpreting North Carolina's second-degree rape statute, we could hardly ask

36

for a clearer mandate from the state's highest court. The majority's novel felony of "non-violent rape" is an oxymoron not recognized in North Carolina law. Id.

This interpretation of North Carolina's rape statutes is now firmly rooted in the state's jurisprudence. The Court of Appeals of North Carolina has heeded the dictates of the state's highest court. "The gravamen of the offense of second[-]degree rape," the Court of Appeals recently reaffirmed, "is forcible sexual intercourse." State v. Haddock, 664 S.E.2d 339, 344 (N.C. Ct. App. 2008). The stipulated conditions of mental disability, mental incapacity, and physical helplessness simply constitute "alternative means by which the force necessary to complete a rape may be shown." Id. at 345; see, e.g., State v. Washington, 506 S.E.2d 283, 290 (N.C. Ct. App. 1998); State v. Martin, 485 S.E.2d 352, 354 (N.C. Ct. App. 1997) (Wynn, J.); State v. Aiken, 326 S.E.2d 919, 926 (N.C. Ct. App. 1985).

The majority too quickly dismisses the "force clause" of the career-offender Guidelines provision, § 4B1.2(a)(1), and too readily assails the straw man of the "residual clause," § 4B1.2(a)(2). See Maj. Op. at 10-16. The residual clause covers any felony that is a "burglary of a dwelling, arson, or extortion, involves use of explosives, or otherwise involves conduct that presents a serious potential risk of physical injury to another." U.S.S.G. § 4B1.2(a)(2). The majority

37

relies on <u>United States v. Thornton</u>, 554 F.3d 443 (4th Cir. 2009). But the differences between that case and this are night and day. The Virginia law in <u>Thornton</u> criminalized "'carnal knowledge'" of a minor "'<u>without</u> the use of force,'" 554 F.3d at 445 n.2 (emphasis added) -- quite unlike North Carolina's forcible crime of second-degree rape. Because the force clause obviously did not apply, <u>id.</u> at 446, all that remained was the residual clause, which the court understandably deemed a poor fit, <u>id.</u> at 446-49. The majority's discussion of <u>Thornton</u> and the residual clause is thus inapposite.

## C.

The majority maintains that the rape of a mentally disabled, mentally incapacitated, or physically helpless person is analogous to statutory rape. The shared logic of those crimes, according to the majority, is that "the fact of consent is not a defense where the victim is unable to give legally valid consent by virtue of age or by virtue of mental disability." Maj. Op. at 7. But the analogy is misguided. As a preliminary matter, North Carolina's second-degree rape statute does not target statutory rape. <u>See</u> N.C. Gen. Stat. § 14-27.3; J.A. 60-66. It makes no mention of the victim's age. It is instead defined by the victim's mental or physical

38

defenselessness and an inability to fathom the basic situation or oppose the aggressor's actions.

I would not equate age and impairment. Some teenagers are mature and responsible; others are decidedly not. But all the victims under North Carolina's second-degree rape statute are by definition required to be lacking in basic mental or physical capacity. Unlike with statutory rape, the extent of the victim's disability must be individually established, sometimes with expert testimony. See State v. Hunt, 722 S.E.2d 484, 491-92 (N.C. 2012). Such circumstances, based on a person's particular mental or physical characteristics, differ markedly from legally insufficient consent based on age alone.

The differences do not stop there. Compulsion is not the operative factor in the crime of statutory rape. This court has already underscored that distinction in the Guidelines context as well. As we observed in an assessment of § 2L1.2, "it is clear that the Sentencing Commission purposely juxtaposed the neighboring terms 'forcible sex offense[]' and 'statutory rape,' with the former intended to connote rape or other qualifying conduct by compulsion and the latter intended to connote rape on account of the victim's age." United States v. Rangel-Castaneda, 709 F.3d 373, 380 (4th Cir. 2013) (emphasis added). Indeed, we specifically held that a Tennessee statutory rape conviction did not qualify as a forcible sex offense. Id.

Before today, at least, the distinction between forcible sex offenses and statutory rape was sharply defined.

Even the cases cited by the majority actually underscore the distinction between second-degree rape and statutory rape. See Maj. Op. at 7-8. The majority quotes a state senator who likened an underlying 1979 bill to "'basically a statutory rape section.'" State v. Atkins, 666 S.E.2d 809, 812 (N.C. Ct. App. 2008) (emphasis added). But the legislator goes on to note a key distinction: this law would apply "'in cases where someone engages in a sex act with a person who is, in fact, incapable of resisting or communicating resistance'" -- against the perpetrator's forcible actions. Id. Atkins itself provides a telling example: the victim was a severely arthritic eighty-three-year-old woman who was deemed "physically helpless" based on her apparent inability "to actively oppose or resist her attacker." Id. at 812-13; see also State v. Huss, 734 S.E.2d 612, 615 (N.C. Ct. App. 2012) (noting that the "factors and attributes" examined in Atkins "were unique and personal to the victim"), aff'd by an equally divided court, 749 S.E.2d 279 (N.C. 2013) (per curiam). The majority cites another case comparing second-degree rape and statutory rape. State v. Banks, 766 S.E.2d 334 (N.C. 2014). In fact, that was a double jeopardy case -- and the Supreme Court of North Carolina expressly found them to be separate and distinct offenses. Id.

40

at 339; see Blockburger v. United States, 284 U.S. 299, 304 (1932).

Statutory rape is, finally, a crime of strict liability in North Carolina. State v. Anthony, 528 S.E.2d 321, 323-25 (N.C. 2000). Laws against statutory rape traditionally lack a mens rea requirement. 2 Wayne R. LaFave, Substantive Criminal Law §§ 5.5, 17.4 (2d ed. 2014). Unlike with statutory rape, this provision contains a strong mens rea requirement. To be convicted under subsection (a)(2), the perpetrator must have known, or reasonably should have known, that the victim was mentally disabled, mentally incapacitated, or physically helpless. N.C. Gen. Stat. § 14-27.3(a)(2). This knowledge forms part of the element of force that is present in virtually all crimes of rape under North Carolina law -- besides the strict liability offense of statutory rape.

The threshold act under subsection (a)(2) is sexual intercourse with a mentally or physically defenseless victim. This is a crime of forcible sexual compulsion. Lack of legally valid consent is but one feature of this offense. One wonders how it has come to be that a perpetrator who acted with guilty knowledge -- to take advantage of a profoundly vulnerable victim who is unable to resist -- could now escape sanction for the

prior commission of what the Guidelines require: a "forcible" sex offense.[3]

### D.

"Force" may involve the exertion of "[p]ower, violence, or pressure" against another person. Black's Law Dictionary 717 (9th ed. 2009). This conception of force is integral to the North Carolina statute. Yet the majority's argument suggests that

---

[3] In its effort to portray many of these crimes as not so very serious, the majority's discussion of anecdotal evidence about Shell's earlier conviction, see Maj. Op. at 8 n.1, impermissibly compromises the categorical approach. "Sentencing courts may 'look only to the statutory definitions' -- i.e., the elements -- of a defendant's prior offenses, and not 'to the particular facts underlying those convictions.'" Descamps v. United States, 133 S. Ct. 2276, 2283 (2013) (quoting Taylor v. United States, 495 U.S. 575, 600 (1990)). Despite its disclaimers, the majority nevertheless proceeds to sift through the scant and fragmentary indications in the record to try to ascertain highly questionable "facts" underlying Shell's predicate offense. Its efforts illustrate why the categorical approach obliges courts to examine "elements, not facts." Id. The alternative is this sort of attempted factfinding from the remove of the appellate bench -- here, without the benefit of the state court's or the sentencing court's findings as to those "facts," without adequate elucidation of the surrounding circumstances, and without any indicia of the transparently self-serving testimony's reliability. What we do know is that Shell was convicted of North Carolina's forcible crime of second-degree rape, which criminalizes vaginal intercourse with someone known to be mentally disabled, mentally incapacitated, or physically helpless. The categorical approach turns on those statutory elements. The majority, however, slides by that approach, notwithstanding the heartbreaking instances of second-degree rape that lie in the weeds of predicate convictions through which federal courts in the course of Guidelines calculations such as this are not permitted to trek.

second-degree rape is somehow not "forcible" enough to be a forcible sex offense, or not "violent" enough to be a crime of violence.

For its own understanding of "force," the majority relies on the Supreme Court's pronouncements in Johnson v. United States, 559 U.S. 133 (2010). See Maj. Op. at 10-11. But Johnson is not like this case. Johnson involved a prior Florida conviction for battery. 559 U.S. at 136-37. With the common law crime of battery, the element of "force" was "satisfied by even the slightest offensive touching." Id. at 139. For the Court, that threshold was too low when applied to a "violent felony." Id. at 140; see also Aparicio-Soria, 740 F.3d at 154-55. In modern parlance, the various definitions of "force" generally do not denote slight touching. Johnson, 559 U.S. at 138-41. The degree of power or pressure indicated by the term "force" is not infinitely expansive. Context does matter. Id. at 139-40. And de minimis contact is assuredly not the issue with the pertinent forms of second-degree rape punished under North Carolina law. Forcible intercourse is light-years removed from nominal battery.

The majority fails to grasp any of the multiple ways in which the North Carolina second-degree rape offense is circumscribed and limited. The forcible nature of this particular crime is unmistakable. The differences between this

43

offense and statutory rape or nominal battery are clear. Nor does the majority appreciate the narrow range of mentally or physically defenseless persons to which this statute applies, on a personalized basis. The reality of what is happening to these victims quite eludes the majority's view. The categorical approach applied by the majority rightly bars our inquiry into the particulars of any single predicate offense. It should not blind us to, in the words of Woody Guthrie, "a picture from life's other side."

## II.

The problems with the majority's approach do not end at the borders of North Carolina. Its decision is also inconsistent with precedents that, until now, seemed to speak with a clear and singular voice about the law governing this circuit. Our past pronouncements left no doubt about the inexorably forcible character of this brutal, unfeeling act.

## A.

This court has already determined, in the context of a comparable Guidelines provision, that second-degree rape under a parallel state statute <u>did</u> constitute a forcible sex offense and thus qualified as a "crime of violence." <u>United States v. Chacon</u>, 533 F.3d 250, 252 (4th Cir. 2008). The pertinent parts

44

of the Maryland second-degree rape statute at issue in Chacon were functionally identical to those in the North Carolina law here. The Maryland statute criminalized "vaginal intercourse" committed (1) "[b]y force or threat of force against the will and without the consent of the other person"; (2) with a victim who is "mentally defective, mentally incapacitated, or physically helpless," when the perpetrator "knows or should reasonably know" of the condition; or (3) with a victim "under 14 years of age," when the perpetrator is "at least four years older than the victim." Md. Code Ann. art. 27, § 463(a)(1)-(3) (repealed 2002) (current version at Md. Code Ann., Crim. Law § 3-304(a)(1)-(3)).

In Chacon, we recognized the fundamentally forcible nature of this crime. Examining the Guidelines provision for illegally reentering the United States, U.S.S.G. § 2L1.2, this court concluded that a violation of Maryland's second-degree rape statute was categorically a forcible sex offense within the ambit of a "crime of violence," Chacon, 533 F.3d at 252. The court's reasoning was this: even without a requirement of the use of physical force, a crime under the Maryland statute was necessarily achieved through some form of compulsion. Id. at 255-56.

Contrary to the majority's suggestion, see Maj. Op. at 17-23, this court's analysis in Chacon applies with equal if not

45

greater power in this case. As with the Guidelines provisions that applied to Shell, U.S.S.G. §§ 2K2.1, 4B1.2, the illegal-reentry Guidelines provision at issue in Chacon provided for a sentencing enhancement if the defendant had previously sustained a felony conviction for a "crime of violence," id. § 2L1.2. In the definition of "crime of violence," the commentary to the illegal-reentry provision likewise listed "forcible sex offenses." Id. § 2L1.2 cmt. n.1(B)(iii). This court focused on the "ordinary, contemporary meaning" of the term "forcible sex offenses," which is not defined in the Guidelines. Chacon, 533 F.3d at 257; see Smith v. United States, 508 U.S. 223, 228 (1993). Perusing dictionary definitions of "force" and "forcible," the court gleaned a significant insight: "a 'forcible sex offense' may be accomplished in the absence of physical force" per se. Chacon, 533 F.3d at 257 (emphasis added). Properly understood, "the use of force necessarily involves a degree of compulsion." Id. And that compulsion "can be effected through 'power' or 'pressure,' which do not necessarily have physical components." Id.

The Maryland statute in Chacon contained a provision virtually identical to the disputed North Carolina provision in this case. Both states' second-degree rape laws criminalize sexual intercourse with a person who is mentally or physically defenseless, where the perpetrator knows or reasonably should

46

know of the victim's condition. <u>See</u> Md. Code Ann. art. 27, § 463(a)(2); N.C. Gen. Stat. § 14-27.3(a)(2). For these crimes, "any nonconsensual sexual contact is forcible because, if actual physical force is unnecessary, some degree of compulsion is nevertheless required to overcome an unwilling victim or take advantage of a helpless and incapacitated one." <u>Chacon</u>, 533 F.3d at 255-56. The only difference between this case and <u>Chacon</u> is that this statute comes from North Carolina, while the statute in <u>Chacon</u> came from Maryland. That point of distinction embodies no neutral principle.

B.

The majority makes much of a technical amendment to the illegal-reentry Guidelines provision that became effective shortly after we handed down <u>Chacon</u>. U.S.S.G. app. C, amend. 722, at 301-03; <u>see</u> Maj. Op. at 22-23. That amendment made clear that "forcible sex offenses" do in fact include instances "where consent to the conduct is not given or is not legally valid, such as where consent to the conduct is involuntary, incompetent, or coerced." <u>Id.</u> § 2L1.2 cmt. n.1(B)(iii). As this court later confirmed, the amendment "was intended simply to clarify that the requisite compulsion need not be physical in nature," and the revised Guidelines language was fully in line with our prior holding in <u>Chacon</u>. <u>United States v. Rangel-</u>

47

Castaneda, 709 F.3d 373, 380 (4th Cir. 2013). The amendment did not alter the governing analysis. If anything, the language of the amendment specifically reinforces the interpretation that the term "forcible sex offenses" here does refer to crimes of compulsion.

In excluding North Carolina's second-degree rape statute from the "crime of violence" definition under § 4B1.2, the majority can only grasp at the thin reed of negative implication. The trouble is that the positive indications undercut the majority's conclusion.

Neither the modified illegal-reentry language in § 2L1.2 nor the unmodified career-offender language in § 4B1.2 supports the majority's proffered requirement of the use of physical force. The Sentencing Commission has not chosen to alter the language in the career-offender provision to impose such a requirement. See Chacon 533 F.3d at 257-58.

The Commission simply has not restricted the meaning of "forcible sex offenses" as the majority does today. Had it wanted to do so, the Commission could easily have added to § 4B1.2 a phrase excluding from the definition of forcible sex offense cases where consent to the conduct was merely "involuntary, incompetent, or coerced." See U.S.S.G. § 2L1.2 cmt. n.1(B)(iii). Yet the Commission did no such thing.

48

The majority professes not to "question" Chacon's interpretation of forcible sex offenses under § 2L1.2, even as it "reach[es] a different result under § 4B1.2." Maj. Op. at 19. The Chacon court, however, would be surprised to learn its ruling was a ticket for one train only. It is not right to cast aside precedents on such a slim and precarious basis.

## C.

The North Carolina statute requires the state to show force. See supra Section I.B. The majority suggests, however, that, even if the statute does require force, that would still be insufficient, because the text of § 4B1.2 and the accompanying Guidelines commentary are fatally inconsistent. The majority stresses that § 4B1.2 requires "physical force," whereas the commentary omits the word "physical" and alludes only to "forcible sex offenses." See Maj. Op. at 9-11. The majority's conclusion of inconsistency not only is incorrect, but will spell trouble down the road in future Guidelines cases.

First, in finding an inconsistency, the majority misconstrues the Supreme Court's mandate in Stinson v. United States, 508 U.S. 36 (1993). The commentary generally deserves "'controlling weight.'" Id. at 45 (quoting Bowles v. Seminole Rock & Sand Co., 325 U.S. 410, 414 (1945)). After all, the very same Sentencing Commission promulgates both the Guidelines text

49

and the accompanying commentary.  Id. at 40-41.  This is not an instance where an agency rule purports to interpret the work of a different instrumentality such as Congress.  Id. at 44.  On the contrary, the Commission is simply interpreting its own work.  Id. at 44-45.  Stipulations contained in the commentary need "not be compelled by the guideline text."  Id. at 47 (emphasis added).  The commentary may give specific form to a broad textual mandate -- that is precisely why the Commission provides both.

Second, there is no nettlesome conflict here between felonies involving "the use, attempted use, or threatened use of physical force," U.S.S.G. § 4B1.2(a)(1), and felonies that qualify as "forcible sex offenses," id. § 4B1.2 cmt. n.1. Whether the prosecution proves the defendant had sex by force and against the other person's will, or whether the element of force is fastened to proof that the defendant had sex with a mentally or physically defenseless victim, these are simply alternative but equal pathways for demonstrating force.  See N.C. Gen. Stat. § 14-27.3(a)(1)-(2); supra Section I.B. Pointedly, the illegal-reentry provision specifically equates "forcible sex offenses" with "any other offense" involving "physical force."  U.S.S.G. § 2L1.2 cmt. n.1(B)(iii).  We should be loath to find the Commission at war with itself and, in so doing, to disregard the settled maxim that the provision of

specific instructions, a conventional function of Guidelines commentary, presumptively trumps more general statements. See RadLAX Gateway Hotel, LLC v. Amalgamated Bank, 132 S. Ct. 2065, 2070-72 (2012).

And third, the instances in which this court has invalidated part of the commentary as inconsistent with the Guidelines text are quite rare. See Stinson, 508 U.S. at 38. On what basis is a federal court, in the role of haruspex, supposed to divine such a delicate inconsistency hidden among the Commission's own pronouncements? Cf. City of Arlington v. FCC, 133 S. Ct. 1863, 1871 (2013). Presumably, the rare occurrences of such purported "inconsistency" holdings still bespeak an understanding by our own and other courts that the Sentencing Commission, through its commentary, can and routinely does provide specific elucidation of the Guidelines' more general textual provisions.

D.

Finally, the majority reads too much into the fact that certain other sex offenses appear in § 2L1.2 but not § 4B1.2. See Maj. Op. at 21. The illegal-reentry provision, § 2L1.2, lists not only "forcible sex offenses" but also "statutory rape" and "sexual abuse of a minor" as examples of crimes of violence. U.S.S.G. § 2L1.2 cmt. n.1(B)(iii). The career-offender provision that applied to Shell, § 4B1.2, mentions "forcible sex

51

offenses" but not the other two crimes.  Id. § 4B1.2 cmt. n.1.
But here, those differences are immaterial.

It is true that Chacon involved § 2L1.2 rather than
§ 4B1.2.  But the logic of the majority turns the old Latin
maxim on its head:  instead of applying expressio unius est
exclusio alterius (i.e., "the expression of one thing is the
exclusion of the other"), the majority treats the exclusion of
one term ("statutory rape") as the expression of another term
("forcible sex offenses") with new meaning.  The proper
inference, rather, is simply that the Sentencing Commission
deliberately excluded the crime of statutory rape from § 4B1.2,
see Barnhart v. Sigmon Coal Co., 534 U.S. 438, 452-53 (2002) --
not that it was modifying the definition of "forcible sex
offenses" sub silentio.

In fact, the balance of the available indications suggests
that the Sentencing Commission wanted "forcible sex offenses" to
retain the same meaning in §§ 2L1.2 and 4B1.2.  The "'normal
rule of statutory construction'" is that "'identical words used
in different parts of the same act are intended to have the same
meaning.'"  Gustafson v. Alloyd Co., 513 U.S. 561, 570 (1995)
(quoting Dep't of Revenue v. ACF Indus., Inc., 510 U.S. 332, 342
(1994)).  Context matters, to be sure.  But the interpretive
context is not appreciably different here.  On the contrary,

52

"forcible sex offenses" is a distinct term with a consistent meaning across §§ 2L1.2 and 4B1.2.

I doubt that the majority would argue that the crimes of murder, manslaughter, kidnapping, aggravated assault, robbery, arson, extortion, extortionate extension of credit, or burglary of a dwelling -- all, like forcible sex offenses, enumerated in both Guidelines provisions -- would assume a substantively different meaning in the two provisions. This is precisely the point of the categorical approach mandated by the Supreme Court: we compare the elements of the particular predicate offense with "the elements of the 'generic' crime -- i.e., the offense as commonly understood." Descamps v. United States, 133 S. Ct. 2276, 2281 (2013). After today's ruling, the rest of us are left to wonder how the generic definition of "forcible sex offenses" could have changed so swiftly and abruptly.

The term "forcible sex offenses" is not quite the chameleon the majority says it is. In fact, in advancing a view of Guidelines interpretation where identical terms assume different meanings at a blink, the majority has started us down the road of a confusing and contradictory Guidelines structure, thus rendering an already difficult interpretive exercise more arcane and byzantine. In sum, the newly contradictory status of our precedents, the new receptivity to finding Guidelines text and commentary at odds, and the new willingness to imbue the same

53

terms with shifting meanings will, whether taken singly or in combination, create crosscurrents and riptides in Guidelines jurisprudence.  That does not bode well for those who need or aspire to understand them.

## III.

I do understand that the circumstances surrounding sexual interactions are often hazy, a fact that makes the preservation of due process protections for accused persons a necessity in all settings.  But here the majority has chosen essentially to absolve, through its construct of nonviolent rape, individuals accorded the full slate of protections in our criminal justice system.  Doctrinal analysis is indispensable to judicial reasoning, but upon occasion it can lead, increment by increment, from sound beginnings toward untenable conclusions. So it is here:  the real need to protect the unthinking expansion of "crimes of violence" has led to a race to restrict them.  If such a restriction makes sense in many instances, it does not in the case at bar.  The victims here cannot resist; they cannot consent.  But they yet retain the capacity to feel the trauma and, yes, the violence that has been so visited upon their very beings.  The majority nevertheless maintains that the rape of someone known to be mentally disabled, mentally incapacitated, or physically helpless is neither a forcible sex

54

offense nor a crime of violence.  The victims, were they even sentient, would beg to differ.  They know not our precedents.  They know not our doctrines.  But somewhere in the recesses of consciousness they do know they have been wronged, and we now know that law has failed to duly recognize it.

I respectfully dissent.