Vacated and remanded by published opinion. Judge HARRIS wrote the majority opinion, in which Senior Judge DAVIS joined. Judge WILKINSON wrote a dissenting opinion.
PAMELA HARRIS, Circuit Judge:
Defendantr-Appellant Aaron Eugene Shell (“Shell”) pleaded guilty to being a felon in possession of a firearm, in violation of 18 U.S.C. § 922(g) (2012). At sentencing, the district court applied an enhanced base offense level on the ground that Shell’s prior North Carolina conviction for second-degree rape constituted a crime of violence under the U.S. Sentencing Guidelines Manual (“U.S.S.G.” or the “Guidelines”) § 2K2.1(a)(4)(A) (2014). The district court also applied a two-level enhancement for obstruction of justice pursuant to Guidelines § 3C1.2, concluding that Shell recklessly created a substantial risk of death or serious bodily injury to another person in the course of fleeing from a law enforcement officer. On appeal, Shell challenges the district court’s application of both enhancements. For the reasons that follow, we vacate Shell’s sentence and remand for resentencing.
I.
On December 27, 2012, Shell was driving southbound on Highway 321 in Caldwell *338 County, North Carolina. North Carolina Trooper Christopher Hodges (“Hodges”), traveling northbound, saw Shell speeding and turned around to follow him. By the time Hodges was able to complete the turn, Shell had disappeared from vehicle had veered off the road and down an embankment.
As he fled the scene of the accident, Shell discarded a bag behind a tree. Officers searched the bag and found a loaded semiautomatic pistol. Several days later, Shell voluntarily submitted to a police interview and admitted that he was the driver of the vehicle and was in possession of the firearm.
Shell was charged with one count of being a felon in possession of a firearm, in violation of 18 U.S.C. § 922(g), and pleaded guilty. The presentence report (“PSR”) recommended raising Shell’s base offense level from 14 to 20 under U.S.S.G. § 2K2.1(a)(4)(A), on the ground that Shell committed the instant offense after a prior felony conviction for a “crime of violence” — here, a North Carolina conviction for second-degree rape. The PSR also recommended a two-level enhancement for obstruction of justice, pursuant to U.S.S.G. § 3C1.2, because Shell’s reckless driving in the course of fleeing from a law enforcement officer created a substantial risk of death or serious bodily injury to another person. Applying those provisions, the PSR calculated a Guidelines range of 57 to 71 months’ imprisonment.
Shell objected to both enhancements. At sentencing, the district court overruled Shell’s objections. As to reckless endangerment under § 3C1.2, the district court credited a witness who testified that Shell sped, skidded, and almost hit her vehicle, and thus concluded that Shell created a substantial risk of death in the course of fleeing from a law enforcement officer. The court also held that Shell’s prior second-degree rape conviction qualified as a “crime of violence” under § 2K2.1.
The district court adopted the PSR and sentenced Shell to 57 months’ imprisonment and three years of supervised release. Shell appeals, challenging the district court’s application of both enhancements.
II.
A.
Under' the Guidelines, a defendant convicted of being a felon in possession of a firearm receives an enhanced base offense level of 20 if he or she has committed a prior “crime of violence,” as defined in Guidelines § 4B1.2. U.S.S.G. § 2K2.1 cmt. n. 1. Shell argues that the district court erred in characterizing his North Carolina conviction for second-degree rape as a crime of violence because the state statute does not require the use of physical force, and may instead be violated through constructive force or the absence of legally valid consent. We review de novo that question of law. United States v. Montes-Flores, 736 F.3d 357, 363 (4th Cir.2013).
The parties agree that in considering whether Shell’s North Carolina conviction constitutes a crime of violence, we must apply what is called the “categorical approach,” which “focus[es] on the elements, rather than the facts,” of the prior offense. United States v. Carthorne, 726 F.3d 503, 511 (4th Cir.2013) (quoting Descamps v. United States, — U.S.-, 133 S.Ct. 2276, 2285, 186 L.Ed.2d 438 (2013)). What matters for the categorical approach is how the law defines the offense generically, and not the particulars of how an individual might have committed the offense on a given occasion. Begay v. United States, 553 U.S. 137, 141., 128 S.Ct. 1581, 170 L.Ed.2d 490 (2008); United *339 States v. Seay, 553 F.3d 732, 737 (4th Cir.2009).
The question we must decide, then, is whether the full range of conduct covered by North Carolina’s second-degree rape statute, “including the most innocent conduct,” would qualify as a crime of violence for purposes of the § 4B1.2 enhancement. United States v. Diaz-Ibarra, 522 F.3d 343, 348, 352 (4th Cir.2008). If it is “evident from the statutory definition of the state crime that some violations of the statute are ‘crimes of violence’ and others are not,” then the state offense is deemed “categorically overbroad” and § 4B1.2 does not apply. United States v. Rangel-Castaneda, 709 F.3d 373, 376 (4th Cir.2013) (quoting Diaz-Ibarra, 522 F.3d at 348). Whether North Carolina second-degree rape categorically qualifies as a crime of violence under this approach is a question of first impression for our court, and for the reasons that follow, we agree with Shell that it does not.
B.
In comparing the elements of North Carolina second-degree rape to § 4B1.2’s definition of “crime of violence,” we begin with the North Carolina statute and the state precedent construing it. North Carolina’s second-degree rape statute consists of two separate offenses, providing that:
(a) A person is guilty of rape in the second degree if the person engages in vaginal intercourse with another person:
(1) By force and against the will of the other person; or
(2) Who is mentally disabled, mentally incapacitated, or physically helpless, and the person performing the act knows or should reasonably know the other person is mentally disabled, mentally incapacitated, or physically helpless.
N.C. Gen.Stat. § 14-27.3 (West 2004). Because the records of Shell’s conviction do not specify which subsection of the statute formed the basis for his conviction, the parties agree, that conviction may be treated as a crime of violence only if both subsections so qualify.
 The first subsection is applicable where “sexual intercourse is effectuated by force and against the victim’s will.” State v. Atkins, 193 N.C.App. 200, 666 S.E.2d 809, 812 (2008). Under North Carolina law, that force requirement may be satisfied either by “actual, physical force or by constructive force in the form of fear, fright, or coercion.” State v. Etheridge, 319 N.C. 34, 352 S.E.2d 673, 680 (1987). Constructive force may be demonstrated by proof of compulsion or threats of force, and also will be inferred from certain relationships — such as a parent-child relationship — that are deemed inherently coercive. See id. at 680-82; State v. Morrison, 94 N.C.App. 517, 380 S.E.2d 608, 611-12 (1989).
The second subsection, by contrast, does not require the state to prove either force or the absence of consent. Atkins, 666 S.E.2d at 812. Instead, it applies to victims who are deemed by law incapable of validly consenting to intercourse or resisting sexual acts, State v. Williams, 207 N.C.App. 136, 698 S.E.2d 542, 544-45 (2010), and it is used by the state in cases where there is factual but legally insufficient consent, see State v. Ramey, No. COA10-1197, 214 N.C.App. 195, 2011 WL 3276720, at *4-5 (N.C.Ct.App. Aug. 2, 2011) (unpublished) (conviction for second-degree rape of mentally disabled victim who initiated intercourse). In this sense, it is analogous to the age element of North Carolina’s statutory rape law: the fact of consent is not a defense where the victim *340 is unable to give legally valid consent by virtue of age or by virtue of mental disability. See Atkins, 666 S.E.2d at 812 (comparing second-degree and statutory rape and quoting legislative history: “In second degree rape, we are adding persons who are mentally defective, mentally incapacitated, or physically helpless. This is basically a statutory rape section....”); see also State v. Banks, 367 N.C. 652, 766 S.E.2d 334, 339 (2014) (statutory and second-degree rape “separately punish the act of intercourse with a victim who, because of her age, is unable to consent to the act, and the act of intercourse with a victim who, because of a mental disability or mental incapacity, is unable to consent to the act”).[1]
C.
Our other point of comparison is the phrase “crime of violence,” as used in the Sentencing Guidelines.[2] As will become important in this case, different guideline provisions describe “crime of violence” differently. But Shell’s sentence was enhanced for a prior crime of violence under U.S.S.G. § 2K2.1, which defines that term by reference to the career-offender guideline, U.S.S.G. § 4B1.2. U.S.S.G. § 2K2.1 cmt. n. 1. Section 4B1.2, in turn, defines a crime of violence as:
(a) ... any offense under federal or state law, punishable by imprisonment for a term exceeding one year, that—
(1) has as an element the use, attempted use, or threatened use of physical force against the person of another, or
(2) is burglary of a dwelling, arson, or extortion, involves use of explosives, or otherwise involves conduct that presents a serious potential risk of physical injury to another.
U.S.S.G. § 4B1.2(a). The commentary elaborates, in relevant part:
“Crime of violence” includes murder, manslaughter, kidnapping, aggravated assault, forcible sex offenses, robbery, arson, extortion, extortionate extension of credit, and burglary of a dwelling.
U.S.S.G. § 4B1.2 cmt. n. 1 (emphasis added).
In its argument, the government skips past the text of § 4B1.2 to focus on its commentary, and in particular the phrase “forcible sex offenses.” But it is the text, of course, that takes precedence, see Stinson v. United States, 508 U.S. 36, 43, 113 S.Ct. 1913, 123 L.Ed.2d 598 (1993) (where commentary is inconsistent with text, text controls), and so that is where we begin. And like two other circuit courts, as well as our own court in an unpublished opinion, we conclude that of *341 fenses that may be committed without physical force and predicated instead on the absence of legally valid consent — as under the North Carolina second-degree rape statute — are not categorically crimes of violence under either clause of § 4B1.2. See United States v. Wray, 776 F.3d 1182, 1187-91 (10th Cir.2015) (conviction for sexual assault with a 10-year age difference not categorically a crime of violence under § 4B1.2); United States v. Wynn, 579 F.3d 567, 572-75 (6th Cir.2009) (sexual battery based on coercive nature of relationship not categorically a crime of violence under § 4B1.2); United States v. Leshen, 453 Fed.Appx. 408, 412-16 (4th Cir.2011) (unpublished) (third-degree rape and aggravated sexual assault based on age of victim not categorically crimes of violence under § 4B1.2).
We can dispense relatively quickly with the first clause of the career-offender guideline — the so-called “force clause” — which covers crimes that have “as an element the use, attempted use, or threatened use of physical force against the person of another.” U.'S.S.G. § 4B1.2(a)(l). For these purposes, the Supreme Court held in Johnson v. United States, “physical force” means “violent force — that is, force capable of causing physical pain or injury to another person.” 559 U.S. 133, 140, 130 S.Ct. 1265, 176 L.Ed.2d 1 (2010); see also United States v. Aparicio-Soria, 740 F.3d 152, 154-55 (4th Cir.2014) (en banc) (applying Johnson). We think it clear that the second subsection of North Carolina’s second-degree rape statute, which does not require the state to prove force at all and may instead be violated if there is legally insufficient consent, does not meet this “violent force” standard, and indeed, the government does not argue otherwise.[3] Nor do we believe that North Carolina’s second-degree rape offense qualifies as a , crime- of violence under § 4B1.2’s “residual clause” or “otherwise clause,” covering any crime that “is burglary of a dwelling, arson, or extortion, involves use of explosives, or otherwise involves conduct that presents a serious potential risk of physical injury to another.” U.S.S.G. § 4B1.2(a)(2).[4] Sex offenses are not among the enumerated crimes. And the final clause, the Supreme Court instructs, does not reach every crime that “otherwise ... presents a serious potential risk of physical injury,” U.S.S.G. § 4B1.2(a)(2), but only those “that are roughly similar [] in kind” to the listed examples — involving conduct that is “purposeful, violent and aggressive” — as well as similar in the “degree of risk” of physical injury they pose. Begay, 553 U.S. at 142-45, 128 S.Ct. 1581.[5] That standard, *342 we have held already, is not met by sex offenses that do not require the use of physical force and may be predicated instead on the legal insufficiency of purported consent. See United States v. Thornton, 554 F.3d 443, 446-49 (4th Cir.2009) (conviction for statutory rape does not fall within residual clause); see also Leshen, 453 Fed.Appx. at 413-14 (same).
That precedent governs here. Like the statutory rape offense considered in Thornton, the second subsection of North Carolina’s statute may be violated without the threat or use of physical force, and on the legal presumption that the victim is unable to consent. See Atkins, 666 S.E.2d at 812. That does not mean, of course, that the crime is not serious; but it does mean, we held in Thornton, that unlike the crimes enumerated in the career-offender guideline, it “does not support an inference that any or all instances of the offense are violent and aggressive.” 554 F.3d at 449; see also Leshen, 453 Fed.Appx. at 414; Wynn, 579 F.3d at 574. Similarly, we do not doubt that sex offenses committed without physical force and against vulnerable victims can present physical as well as psychological risks, in the form of sexually transmitted diseases or health concerns attendant to pregnancy. But we have concluded that those risks are not comparable to the physical risks generated by the crimes listed in § 4B1.2(a)(2), both because they are more attenuated and because they are not “violent in nature.” Thornton, 554 F.3d at 449; see Leshen, 453 Fed.Appx. at 414.
At issue in Thornton (and Leshen, as well) was a statute criminalizing adult sexual contact with minors, whereas North Carolina’s statute criminalizes sexual intercourse with those who are mentally disabled or incapacitated. But nothing about that distinction renders the logic of Thornton any less applicable here. Like statutory rape laws, North Carolina’s second-degree rape statute does not require the state to prove force or the absence of consent in fact, Atkins, 666 S.E.2d at 812, and there is at least a “realistic probability,” Diaz-Ibarra, 522 F.3d at 348, that the statute would apply in situations in which a victim is presumed unable to give legally valid consent, Williams, 698 S.E.2d at 544-45; Ramey, 2011 WL 3276720, at *4-5. Those are precisely the features that led us to conclude in Thornton that statutory rape is not a crime of violence under § 4B1.2. See 554 F.3d at 448 (“[A] victim’s lack of ability to give legal consent” does not make statutory rape “inherently violent and aggressive.”); see also Leshen, 453 Fed.Appx. at 414. In applying § 4B1.2’s definition of crime of violence, we see no grounds for distinguishing between sexual intercourse with a victim whose consent is legally invalid because he or she is fourteen years old, and sexual intercourse with an adult victim whose consent is legally invalid because he or she has the mental capacity of a fourteen-year-old. Indeed, as noted above, North Carolina law itself draws precisely this parallel, treating the second subsection of its second-degree rape statute as analogous to its statutory rape law. See Atkins, 666 5.E.2d at 812 (“This is basically a statutory rape section....”); Banks, 766 S.E.2d at 339.[6] Thornton controls on this ques *343 tion, and we are bound to find that North Carolina’s second-degree rape statute is not categorically a crime of violence under § 4B1.2(a)(2)’s residual clause.[7]
D.
. We turn now to the government’s argument on appeal. The government does not contest, at least directly, our holding that a North Carolina second-degree rape conviction does not qualify categorically as a crime of violence under either clause of § 4B1.2’s definition. Instead, the government rests its argument entirely on the commentary to § 4B1.2, which lists “forcible sex offense[]” as an example of a crime of violence. U.S.S.G. § 4B1.2 cmt. n. 1. More specifically, the government contends that because sex offenses resting on legally insufficient consent constitute “forcible sex offenses” under a different section of the Guidelines — Guidelines § 2L1.2 — they must be crimes of violence under the commentary to § 4B1.2, as well. Two other circuit courts have rejected precisely that argument, see Wynn, 579 F.3d at 574-75 (Sixth Circuit); Wray, 776 F.3d at 1187-88 (Tenth Circuit); see also Leshen, 453 Fed.Appx. at 415-16 (Fourth Circuit, unpublished), and we join them now.
Section 2L1.2 of the Guidelines enhances the base offense level for certain immigration violations where the defendant has committed a prior felony “crime of violence” or misdemeanor “crimes of violence.” U.S.S.G. § 2L1.2(b)(l)(A), (E). The text of § 2L1.2 does not define crime *344 of violence and, unlike the provision under which Shell was sentenced, it does not incorporate by reference § 4B1.2’s two-clause definition of crime of violence. Instead, § 2L1.2 includes commentary listing “forcible sex offense[ ]” as an example of a crime of violence. Id. at cmt. n. l(B)(iii).
In United States v. Chacon, we applied § 2L1.2 to a subsection of a Maryland statute much like the second subsection of North Carolina’s statute, criminalizing intercourse with a person who is mentally defective, mentally incapacitated, or physically helpless. 533 F.3d 250, 255 (4th Cir.2008). At the time, § 2L1.2’s commentary provided:
“Crime of violence” means any of the following offenses under federal, state, or local law: murder, manslaughter, kidnapping, aggravated assault, forcible sex offenses, statutory rape, sexual abuse of a minor, robbery, arson, extortion, extortionate extension of credit, burglary of a dwelling, or any offense under federal, state, or local law that has as an element the use, attempted use, or threatened use of physical force against the person of another.
U.S.S.G. § 2L1.2 cmt. n. l(B)(iii) (2006) (emphases added). We held, first, that the Maryland offense did not have “as an element the use, attempted use, or threatened use of physical force,” and so did not fall within § 2L1.2’s “force clause.” Cha-con, 533 F.3d at 255-56.[8] We went on to find, however, that it nevertheless qualified as a “forcible sex offense[ ]” within the meaning of § 2L1.2. Id. at 256-58. In the absence of a textual definition, we relied on the “ordinary, contemporary” meaning of “forcible” and concluded that it reaches not only physical force but also compulsion effectuated through “power” or “pressure,” id. at 257, as when a rape is “accomplished by taking advantage” of someone who cannot give legal consent, id. at 258. And extending “forcible sex offenses” to statutes that do not require physical force and instead presume the inability to consent, we held, is consistent with § 2L1.2’s commentary as a whole, which expressly enumerates the similar offenses of “statutory rape” and “sexual abuse of a minor.” See id.
It is Chacon’s “common meaning” analysis on which the government relies most heavily here. The government argues that once we have established the common meaning of the phrase forcible sex offenses, that common meaning stays the same, traveling with the term wherever it appears in the Guidelines. Appellee’s Br. 25 (“It is difficult to imagine how ... examining the common meaning of the phrase forcible sex offense [] would lead to a different result simply based on where the enumerated offense appears in the guidelines.”). We appreciate the logic of this position, but, as in Leshen, 453 Fed. Appx. at 414-16, we must disagree.
As the Supreme Court recently reminded us, when it comes to statutory construction, context matters. See Yates v. United States, — U.S.-, 135 S.Ct. 1074, 1082, 191 L.Ed.2d 64 (2015) (“In law as in life, [ ] the same words, placed in different contexts, sometimes mean different things.”). Section 4B1.2’s career-offender guideline, at issue here, and § 2L1.2’s immigration guideline, construed in Chacon, are different provisions, with significantly different texts and structures. Accordingly, while *345 we of course do not question Chacon’s conclusion that offenses presuming the inability to consent qualify as forcible sex offenses under § 2L1.2’s commentary, we reach a different result under § 4B1.2.
Both provisions, as the government says, list forcible sex offenses in their commentaries. But critically, while § 2L1.2 defines crime of violence entirely through that commentary, § 4B1.2 provides a separate two-part definition of crime of violence in its text, with the commentary serving only to amplify that definition, and any inconsistency between the two resolved in favor of the text, Stinson, 508 U.S. at 43,113 S.Ct. 1913. So in interpreting “forcible sex offenses” in § 4B1.2’s commentary, we do not write on a blank slate; instead, we have a carefully reticulated definition of crime of violence to which we must adhere. See Leshen, 453 Fed.Appx. at 415 (under § 4B1.2, “ ‘[forcible sex offenses’ does not have freestanding definitional power,” but must instead be linked to a prong of the textual definition of crime of violence); see also United States v. Benkahla, 530 F.3d 300, 312 (4th Cir.2008) (recognizing courts’ “duty to harmonize Guidelines and commentary”). And as discussed above, that textual definition comes to us glossed by Supreme Court and Fourth Circuit precedent that precludes its application to offenses committed without “violent” force and predicated on the legal invalidity of consent. Chacon, on the other hand, interpreted “forcible sex offenses” as a freestanding phrase, without the constraints imposed by § 4B1.2’s text, and so had the leeway to canvas outside sources in search of ordinary meaning. 533 F.3d at 257 (“When a word is not defined by statute, we normally construe it in accord with its ordinary or natural meaning.” (quoting Smith v. United States, 508 U.S. 223, 228, 113 S.Ct. 2050, 124 L.Ed.2d 138 (1993))). Those are markedly different interpretive enterprises, driven by the different structures of the provisions, and it should be no surprise that we end up in different places.
Moreover, the full text of the two commentaries themselves strongly suggests a broader reading of the term “crime of violence” under the immigration guideline at issue in Chacon than under the career-offender guideline before us today. As we explained in Chacon, the commentary to § 2L1.2 includes not only “forcible sex offenses” but also other offenses that do not require physical force, such as statutory rape and sexual abuse of a minor, in its list of enumerated crimes of violence. 533 F.3d at 258 (citing U.S.S.G. § 2L1.2 cmt. n. l(B)(iii)). Section 4B1.2’s commentary, on the other hand, does not list statutory rape or sexual abuse of a minor, but only offenses that plainly involve physical force, such as murder and aggravated assault. U.S.S.G. § 4B1.2 cmt. n. 1. On its face, the commentary to the immigration guideline sweeps further arid “expressly cover[s] more sex crimes” than the career-offender commentary. Wynn, 579 F.3d at 575; see Leshen, 453 Fed.Appx. at 415-16. Reading “forcible sex offenses” to include offenses committed without physical force and predicated on legally invalid consent makes sense under § 2L1.2’s commentary in a way it would not under § 4B1.2’s commentary.
Finally, we think it is clear that the Sentencing Commission intended this result. First, the Commission chose to include multiple and different definitions of “crime of violence” in the Guidelines. Had it wanted that term to have the same scope each time it appeared, then the obvious solution would have been to provide one uniform definition, applicable throughout. Instead, the Commission set out different “crime of violence” enhancements for different underlying crimes. The felon-in-possession guideline under which Shell was *346 sentenced, § 2K2.1, by cross-referencing § 4B1.2’s definition, provides for an enhancement if Shell is a “career offender”— the “kind of person who might deliberately point the gun and pull the trigger.” Be-gay, 553 U.S. at 146, 128 S.Ct. 1581. If the Commission had wanted to enhance felon-in-possession sentences for a broader range of crimes of violence, including misdemeanor crimes, then it simply could have cross-referenced § 2L1.2, instead. See Wray, 776 F.3d at 1188.
Second, in 2008 and after we decided Chacon, the Sentencing Commission amended the commentary to § 2L1.2’s immigration guideline, adding a parenthetical: “forcible sex offenses (including where consent to the conduct is not given or is not legally valid, such as where consent to the conduct is involuntary, incompetent, or coerced).... ” U.S.S.G. § 2L1.2 cmt. n. l(B)(iii) (emphasis added). At the same time, the Commission left § 4B1.2 intact, explaining that its purpose was to “clarif[y] the scope of the term ‘forcible sex offense’ as that term is used in the definition of ‘crime of violence’ in § 2L1.1.” U.S. Sentencing Guidelines Manual app. C, vol. Ill, amend. 722, at 302 (2011) (emphases added). “[T]he logical conclusion that we must draw is that the Sentencing Commission did not intend for ‘forcible sex offenses’ under § 4B1.2 to be' defined the same way as ‘forcible sex offenses’ under § 2L1.2.” Wynn, 579 F.3d at 575; see Wray, 776 F.3d at 1188 (citing maxim of expressio unius est exclusio al-terius and concluding that the express inclusion of invalid-consent offenses in § 2L1.2 “suggests, at a minimum,” that those offenses are not covered by § 4B1.2); Leshen, 453 Fed-Appx. at 415-16 (relying on Commission’s decision to amend § 2L1.2 but not § 4B1.2).
Following the reasoning of the Sixth and Tenth Circuits, we hold that Shell’s prior conviction for North Carolina second-degree rape is not categorically a crime of violence under § 4B1.2. Our decision should not be understood to minimize in any way the seriousness of the offenses proscribed by the North Carolina statute or the importance of the state’s interest in protecting the most vulnerable of victims. But whether the full range of conduct covered by that state statute constitutes a crime of violence under § 4B1.2, as construed both by our court and the Supreme Court, is a different question, which we are obliged to answer in the negative. Because the district court erred in characterizing Shell’s prior conviction as a crime of violence and thereby enhancing Shell’s base offense level for illegally possessing a firearm, we vacate Shell’s sentence and remand for resentencing.
III.
The district court also enhanced Shell’s sentence under Guidelines § 3C1.2, for “recklessly creating] a substantial risk of death or serious bodily injury to another person in the course of fleeing from a law enforcement officer.” Shell concedes on appeal that he drove recklessly during the incident leading to his arrest, but argues that the enhancement does not apply because he was not aware that he was being pursued by a law enforcement officer. We evaluate that legal claim de novo and review relevant factual findings by the district court for clear error. United States v. Carter, 601 F.3d 252, 254 (4th Cir.2010).
A.
Our court has not addressed whether the § 3C1.2 enhancement applies if the defendant was unaware that he was being pursued by an officer. But every circuit to consider the question has concluded that the enhancement is not warranted where an officer is following a defendant but the *347 defendant does not know that the officer is in pursuit, and is driving recklessly for some other reason. See United States v. Martikainen, 640 F.3d 1191, 1193-94 (11th Cir.2011) (per curiam); United States v. Moore, 242 F.3d 1080, 1082 (8th Cir.2001); United States v. Hayes, 49 F.3d 178, 183-84 (6th Cir.1995). At argument, the government conceded that this is the correct reading of § 3C1.2. We agree, and now adopt that reading, joining our sister circuits in holding that the § 3C1.2 enhancement does not apply where a defendant was unaware that he was being pursued by a law enforcement officer.
This interpretation of § 3C1.2 comports with the Sentencing Commission’s reason for promulgating it. See U.S. Sentencing Guidelines Manual app. C, vol. I, amend. 347, at 196-99 (2008). The provision is a derivative of Guidelines § 3C1.1, the obstruction-of-justice enhancement, which targets defendants who engage in conduct to mislead authorities or otherwise interfere with the disposition of criminal charges. See id. at 196. The Commission found that “reckless endangerment during flight is sufficiently different from other forms” of obstruction of justice that it warranted a separate enhancement, and § 3C1.2 is expressly made applicable to resisting arrest. Id. at 199. Those origins make clear, we believe, that § 3C1.2 is intended to capture “behavior that could be viewed as an obstruction of justice,” and thus requires that a defendant be aware that he or she is fleeing from a law enforcement officer. Hayes, 49 F.3d at 183.
B.
At sentencing in this case, the parties contested both whether Shell recklessly created a risk of injury and — despite the absence of circuit precedent — whether Shell knew that he was being pursued by the police. As to reckless endangerment, the government relied principally on the testimony of Nicole Smith, who described “screeching tires” and a “black car coming sideways” that “missed [her] by about two inches.” J.A. 44-45. Shell sought to rebut that testimony primarily through the absence of skid marks on the road.
The case as to Shell’s knowledge of police pursuit was complicated by the fact that Shell already was speeding at the time Hodges encountered him while traveling in the opposite direction, and that Shell was no longer within Hodges’s sight once Hodges activated his siren and turned around to follow Shell. Shell argued that he was unaware that Hodges had decided to pursue him, and pointed for support to witness testimony that Shell had expressed concern when a bystander to his accident called the police — concern that would have been beside the point, Shell argued, had he believed that the police already were in pursuit. The government, for its part, pointed to Shell’s flight from the scene of the accident and his admission that he had seen Hodges at some point, though it was unclear whether before or after Hodges activated his siren. According to the government, Shell’s concern about the call to the police after his accident could be explained by Shell’s belief that he had eluded Hodges successfully up until that point.
In imposing the § 3C1.2 enhancement at sentencing, the district court made the following finding:
The court credits the testimony of Ms. Smith as to the perception she had at the time of the approach of the black Mercedes to her car which she described as being sideways in the roadway and making substantial skidding noises and that it missed her car by approximately two inches. And that testimony is fortified by the fact that no — people don’t tend to forget that sort of thing. [An *348 inconsistent detail in Smith’s testimony] is not critical to the analysis under U.S. Sentencing Guidelines 3C1.2. Defendant did create a substantial risk of death or serious bodily injury to her in the course of fleeing from a law enforcement officer.
J.A. 58-59. The final sentence, incorporating the ultimate finding, quotes the language of § 3C1.2, in determining that Shell “created a substantial risk of death or serious bodily injury,” and did so “in the course of fleeing from a law enforcement officer.” U.S.S.G. § 3C1.2. But because the district court did not have the benefit of the ruling we announce today, it had no occasion to make a separate finding that Shell was aware that he was being pursued by Hodges. And given the preceding context, which focuses exclusively on the separate question of whether Shell recklessly endangered Smith, we cannot be certain that the district court in fact did make such a finding. Accordingly, we remand on this issue, as well, so that the district court may apply our newly announced understanding of § 3C1.2 to this case and clarify whether Shell knew that he was being pursued by law enforcement.
IV.
For the foregoing reasons, we vacate the district court’s judgment and remand for resentencing consistent with this opinion.

VACATED AND REMANDED

. To the extent our dissenting colleague suggests that lack of legally valid consent cannot alone sustain a conviction for North Carolina second-degree rape, as opposed to statutory rape, we must respectfully disagree. See Williams, 698 S.E.2d at 544-45. Nor is the prospect of prosecution in cases of factual but legally insufficient consent so fánciful that we may overlook it under the categorical approach. See Ramey, 2011 WL 3276720, at *4-5. Indeed, at his sentencing hearing, Shell adduced testimony that his own conviction under the statute was for engaging in sexual intercourse with his stepsister by marriage when both were young and with factual consent. The particulars of Shell's offense, of course, do not control the analysis under the categorical approach we apply. But they may help to illustrate the practical scope of the North Carolina statute at issue.

. As is customary, we rely as well on cases construing the phrase "violent felony" under the Armed Career Criminal Act, "because the two terms have been defined in a manner that is substantively identical.” Montes-Flores, 736 F.3d at 363 (internal quotation marks omitted).

. As the dissent notes, the North Carolina Supreme Court has held that for purposes of the state's own sentencing laws, felony rape necessarily is a crime of violence. See State v. Holden, 338 N.C. 394, 450 S.E.2d 878, 884 (1994). But the meaning of "physical force” under § 4B1.2(a)(1) is a question of federal law, not state law, and in answering that question, we "are not bound by a state court’s interpretation of a similar — or even identical — state statute.” Johnson, 559 U.S. at 138, 130 S.Ct. 1265. Instead, we follow Johnson and other Supreme Court and Fourth Circuit precedent that bears on the relevant federal provision before us.

. The dissent chides us .for giving too much attention to the "straw man of the ‘residual clause’ " at the expense of § 4B1.2's force clause. Post at 351. But this is an unusual case in that the government ignores both clauses equally, and that makes it hard for us to say which is the straw man. On the assumption that the government’s argument must be anchored at least implicitly in one of § 4B1.2’s textual clauses, and without further guidance from the government as to which, we feel ourselves obliged to address both.

.Although the Supreme Court refined the Begay approach in Sykes v. United States,U.S. -, 131 S.Ct. 2267, 2275-76, 180 L.Ed.2d 60 (2011), we continue to require *342 that an offense be similar to the listed examples both in kind and in degree of risk before it can qualify as a crime of violence under the residual clause. See United States v. Martin, 753 F.3d 485, 490 (4th Cir.2014).

. The dissent argues that offenses under the second-degree rape statute necessarily are "violent” in a way that statutory rape is not because the second subsection of that statute limits its reach to defendants who know — or do not know, but should — that a victim is mentally disabled or otherwise falls within the *343 protected category. We cannot agree. A defendant’s "guilty knowledge" that a victim is mentally disabled, post at 353 — or his failure to discern mental disability when it is found that he should, see Williams, 698 S.E.2d at 546-47 (despite his own mental impairments, defendant "reasonably should have discovered” victim’s mental disability) — of course may bear on culpability, and, again, we do not doubt the gravity of offenses under North Carolina’s statute. But that is a distinct question from whether all such offenses are "inherently violent and aggressive,” Thornton, 554 F.3d at 448, and as we have held, sex offenses committed against victims who give factual (but legally invalid) consent are not "inherently violent” in that sense, id. Moreover, because North Carolina second-degree rape, like statutory rape, presumes invalid any consent, it may be committed even when a defendant lacks the intent to override the will of a factually consenting victim, and is in that way akin to a strict liability, recklessness, or negligence offense. See Sykes, 131 S.Ct. at 2275-76; Begay, 553 U.S. at 144-45, 128 S.Ct. 1581; Thornton, 554 F.3d at 448.

. Our conclusion here is limited to the second subsection of North Carolina’s statute. We should note, however, that even if the second subsection could be reconciled with the text of § 4B1.2, there would remain the question of the first. And because that subsection may be violated through force that is constructive rather than physical, it, too, raises significant issues under § 4B1.2. After Johnson, 559 U.S. at 140, 130 S.Ct. 1265 ("physical force” under § 4B1.2(a)(1) means "violent force”), we doubt that a statute requiring only constructive force in the form of an inherently coercive relationship, like the first subsection of the North Carolina law, can be brought within the force clause. See United States v. Vann, 660 F.3d 771, 779 n. 2 (4th Cir.2011) (en banc) (King, J., concurring). And there is room to question whether an offense under the first subsection that is predicated on an inherently coercive relationship could fall within the residual clause, as sufficiently similar in kind and degree of risk of physical injury to § 4B1.2(a)(2)'s listed examples. See Thornton, 554 F.3d at 448 (rejecting government argument that sex offense involves constructive force and therefore falls within residual clause); see also Leshen, 453 Fed.Appx. at 415 (constructive force "no longer satisfies either prong” of § 4B1.2’s definition of crime of violence). But we need not resolve those issues today. As we have explained, North Carolina's second-degree rape statute can qualify categorically as a crime of violence only if both its subsections are covered by § 4B1.2, and so our determination that the second subsection reaches offenses that fall outside the terms of § 4B1.2 is enough to dispose of this case.

. The dissent relies heavily on Chacon in arguing that North Carolina second-degree rape falls within § 4B1.2, and presumably its force clause. But if Chacon's construction of the § 2L1.2 commentary directly governed this case, as the dissent urges, then surely this part of Chacon's holding would govern, as well, and eliminate § 4B1.2's force clause as a textual basis for the dissent’s position.