**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

No. 19-4203

UNITED STATES OF AMERICA,

Plaintiff − Appellee,

v.

NIKE APOLLO PERRY,

Defendant – Appellant.

Appeal from the United States District Court for the Western District of North Carolina, at Charlotte. Max O. Cogburn, Jr., District Judge. (3:18-cr-00071-MOC-DCK-1)

Submitted: March 18, 2020                                    Decided: July 7, 2020

Before DIAZ and RICHARDSON, Circuit Judges, and Thomas E. JOHNSTON, Chief United States District Judge for the Southern District of West Virginia, sitting by designation.

Affirmed by unpublished opinion. Judge Diaz wrote the opinion, in which Judge Richardson and Judge Johnston joined.

Anthony Martinez, Federal Public Defender, Joshua B. Carpenter, Appellate Chief, FEDERAL DEFENDERS OF WESTERN NORTH CAROLINA, INC., Asheville, North Carolina, for Appellant. R. Andrew Murray, United States Attorney, Anthony J. Enright, Assistant United States Attorney, OFFICE OF THE UNITED STATES ATTORNEY, Charlotte, North Carolina, for Appellee.

Unpublished opinions are not binding precedent in this circuit.

DIAZ, Circuit Judge:

Nike Apollo Perry was sentenced to 47 months' imprisonment after he pleaded guilty to being a felon in possession of a firearm. Perry now appeals that sentence, arguing that the district court erred by categorizing his prior conviction of North Carolina second-degree murder as a "crime of violence" under the Sentencing Guidelines. Because we find the alleged error to be harmless, we affirm.

I.

A.

Perry was driving a stolen vehicle while being pursued by police when he collided with another car. Perry then fled on foot and threw a semi-automatic pistol to the side. Police gave chase, ordered Perry to get on the ground and, after a brief struggle, arrested him. Because Perry had a prior conviction of second-degree murder in North Carolina, he was charged with one count of being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g).[1] He pleaded guilty.

The presentence report recommended that Perry receive a four-level sentencing enhancement for possessing a firearm "in connection with another felony offense," U.S.S.G. § 2K2.1(b)(6)(B), referring to Perry's possession of a stolen vehicle, *see* N.C. Gen. Stat. § 20-106 (current version at § 14-71.2). The report also recommended a two-level sentencing enhancement for endangering others while fleeing from law enforcement.

_____

[1] Perry was also charged in state court with possessing a stolen vehicle.

*See* U.S.S.G. § 3C1.2. Finally, the report recommended that Perry's base offense level be raised from 14 to 20 because his second-degree murder conviction is a "crime of violence" under the Guidelines. *See id.* § 2K2.1(a)(4)(A) (providing for a crime of violence enhancement); *see also id.* § 4B1.2 (defining "crime of violence").

Perry objected to the application of each enhancement. Among other things, Perry argued that he wasn't subject to the four-level enhancement for possessing a firearm in connection with another felony because there was no evidence that he stole the vehicle and, in any event, the two offenses were unrelated. Perry next argued that the two-level enhancement didn't apply because he wasn't fleeing from law enforcement and, in fact, was unaware that he was being pursued by the police. Moreover, Perry argued, the two-level and four-level enhancements can't be applied simultaneously when they arise from the same incident. Finally, Perry objected to the use of his North Carolina second-degree murder conviction to increase his base offense level, arguing that it didn't categorically qualify as a crime of violence because it incorporated more conduct than generic murder.

### B.

The parties proceeded to sentencing. The court first heard argument on whether second-degree murder qualifies as a crime of violence. Perry argued that North Carolina's version of second-degree murder is unusual because, unlike the generic offense, it permits convictions of drug sellers whose buyers subsequently overdose. The government disagreed, arguing that second-degree murder is a quintessential crime of violence and that any argument to the contrary was foreclosed by precedent.

4

After hearing argument on the issue, the court speculated that its decision would be the subject of an appeal. It then proceeded to overrule the objection, declaring its "belie[f] [that] second degree murder is a crime of violence." J.A. 36. The court then remarked, "You'd think we'd have something by now so I don't have to be the test cow, but I guess I'm the test cow." *Id.*

The court next heard argument on the two-level and four-level enhancements. The government submitted testimony from a detective involved in Perry's pursuit as well as video footage depicting the chase. Over the course of the proceedings, the court expressed increasing concern for the danger Perry posed to officers and the public. For instance, the court stated that Perry was driving recklessly in a residential area and was running with a loaded gun that he "may have . . . initially intend[ed] to use." J.A. 71. The court summarized:

> This was just somebody, the law just doesn't apply to me. I'm going to steal this lady's car. . . . I'm going to race down the road if they get after me. I'm going to wreck it and almost kill somebody at the stop sign. Not satisfied, me and my gun are going to jump out and run. And then I'm going to pull it out . . . it's one thing after another. . . . Defendants and firearms [are] one of the worst [crimes] for the public in this country because that's how people really get hurt.

J.A. 72.

Ultimately, the court sustained Perry's objection to the two-level enhancement on the basis that it can't be applied simultaneously with the four-level enhancement when stemming from the same incident. This outcome, the court stated, was despite its belief that "the facts support the two-level [enhancement] also." J.A. 73.

5

Perry thus faced a Guidelines range of 41-51 months' imprisonment. The court proceeded to hear mitigation and, finally, to announce Perry's sentence. Before announcing the sentence, the court again commented on the gravity of the offense:

> [N]ot satisfied with stealing the car, not satisfied with driving to the terror of the public and fleeing and wrecking into somebody and injuring them, [Perry] then jumps from the car and runs from the officers and he has the gun -- still has the weapon endangering everybody out there. This is a serious, serious matter.

J.A. 82–83. The court then imposed a 47-month sentence. It did so, the court declared, in spite of the fact that on this fact situation the Court believes . . . that a sentence in the mid 50s is more appropriate." J.A. 84. Commenting again on Perry's potential appeal, the court declared, "I can tell you in a resentencing of this case, I'd give 47 months . . . . This is a bad set of facts. A bad set of facts." *Id.* In a statement of reasons filed two weeks after the hearing, the court reiterated this intent, noting that the sentence "is appropriate based on the facts of this case regardless of the application of any enhancements." J.A. 128.

This appeal followed.

## II.

Perry's sole argument on appeal is that North Carolina second-degree murder doesn't qualify as a crime of violence under the Guidelines. To determine whether an offense is a crime of violence, we employ the categorical approach. *United States v. Shell*, 789 F.3d 335, 338 (4th Cir. 2015). "What matters for the categorical approach is how the law defines the offense generically, and not the particulars of how an individual might have

6

committed the offense on a given occasion." *Id.* In particular, we ask whether "the most innocent conduct" covered by the statute of conviction would qualify as a "crime of violence" for purposes of the Guidelines enhancement. *Id*. at 339 (cleaned up). If "some violations of the statute are crimes of violence and others are not, then the state offense is deemed categorically overbroad" and the conviction doesn't qualify. *Id.* (cleaned up).

Applying this approach here, Perry argues that North Carolina second-degree murder is categorically overbroad because, unlike the generic offense, it incorporates killings committed without malice. For this proposition, Perry points to convictions stemming from cases of death by overdose. *See State v. Parlee*, 703 S.E.2d 866 (N.C. Ct. App. 2011); *see also State v. Liner*, 391 S.E.2d 820 (N.C. Ct. App. 1990). The government disagrees, arguing that the North Carolina offense is coterminous with its generic counterpart. Even in cases of death by overdose, the government reasons, North Carolina's second-degree murder offense requires a mental state that's *at least* as culpable as generic malice.

We need not reach the merits of this dispute should we determine that the alleged error was harmless in any event. *See United States v. McDonald*, 850 F.3d 640, 643 (4th Cir. 2017). Indeed, "it would make no sense to set aside a reasonable sentence and send the case back to the district court [when] it has already told us that it would impose exactly the same sentence, a sentence we would be compelled to affirm." *United States v. Savillon-Matute*, 636 F.3d 119, 123 (4th Cir. 2011) (cleaned up).

A Guidelines error is harmless if the record shows that (1) the district court would have imposed the same sentence "even if it had decided the [G]uidelines issue the other

7

way," and (2) "the sentence would be reasonable even if the [G]uidelines issue had been decided in the defendant's favor." *United States v. Gomez-Jimenez*, 750 F.3d 370, 382 (4th Cir. 2014) (cleaned up). To find an error harmless, we must be "certain" that both prongs are satisfied. *United States v. Gomez*, 690 F.3d 194, 203 (4th Cir. 2012).

As we explain, application of this two-pronged inquiry here provides us such certainty. Accordingly, we decline to determine whether North Carolina second-degree murder is a crime of violence under the Guidelines.

A.

As to the first prong, the record makes it abundantly clear that the district court would have imposed the 47-month sentence regardless of the alleged error. This prong imposes "no requirement" on the district court to "specifically state that it would give the same sentence" absent the challenged enhancement. *McDonald*, 850 F.3d at 644 (cleaned up). Nonetheless, "the district court's sentencing intent [must be] clear from the record." *Id.* at 645. Thus, "something more than a review by the district court of the § 3553(a) factors is needed." *United States v. Montes-Flores*, 736 F.3d 357, 370 (4th Cir. 2013), *superseded on other grounds by statute*, S.C. Code Ann. §§ 16-3-29, 16-3-600, *as recognized in United States v. Butler*, 760 F. App'x 194 (4th Cir. 2019) (unpublished) (per curiam).

Here, the district court made its sentencing intent abundantly clear. Most glaringly, the court declared, "I can tell you in a resentencing of this case, I'd give 47 months." J.A. 84. Weeks after the hearing, the court reiterated this intent in its statement of reasons, noting that "the sentence is appropriate based on the facts of this case regardless of the

8

application of *any enhancements*." J.A. 128 (emphasis added).[2] Moreover, the court twice expressed its belief that an even *higher* sentence was warranted, explaining that it "had looked at the facts of this case and had decided that a sentence . . . in the mid to upper 50s[] is an appropriate sentence." J.A. 83–84. The court later reiterated, "I am sentencing at 47 months in spite of the fact that on this fact situation the [c]ourt believes that to meet the [§] 3553(a) factors, that a sentence in the mid 50s is more appropriate." J.A. 84.

Perry argues that these statements relate *only* to the court's decision to apply the four-level enhancement and *not* to its decision to treat Perry's prior conviction as a crime of violence. For this proposition, Perry points to the court's statement that "if this four-level [enhancement] didn't apply, the [c]ourt believes that 47 months under these circumstances is appropriate." J.A. 83. We reject this argument, which requires a myopic focus on this single sentence at the expense of the entire record.

Perry also insists that the alleged error wasn't harmless because the court stated that its crime-of-violence decision would be a "test cow" for appellate review. Again, we disagree. The court's prediction that it would be a "test cow" simply referred to the court's

---

[2] The Guidelines commentary describes a prior crime of violence as resulting in an increased "[b]ase [o]ffense [l]evel" rather than an "enhancement." *See* U.S.S.G § 2K2.1. Nonetheless, the court's reference to "any enhancements" clearly incorporates its crime-of-violence decision which, in the same statement of reasons, it characterizes as "*enhanc[ing]* the base offense level." J.A. 125 (emphasis added). Perry also construes the crime of violence determination in this manner, referring to the issue as the "crime of violence *enhancement*" throughout his appellate briefs. *See, e.g.*, Appellant's Br. 2 (emphasis added).

awareness that Perry would appeal its decision. The court didn't thereby concede prejudicial error upon that review.

Moreover, the "test cow" comment was made at the beginning of sentencing, before the government introduced testimony and video footage relating to Perry's offense. As the hearing developed, the court expressed increasing levels of concern with what it considered to be "a bad set of facts," a "serious, serious matter," and an offense that "endanger[ed] everybody out there." J.A. 83, 84. As described above, only then, at the conclusion of sentencing, did the court make repeated comments that this offense demanded (at least) a 47-month sentence. We decline to find that the court's passing "test cow" comment renders this entire record, which had yet to develop, immune from harmless error review.

B.

As to the second prong, we conclude that the 47-month sentence would be substantively reasonable even if the disputed issue was decided in Perry's favor. The alleged error increased Perry's advisory Guidelines range from 21-27 months' imprisonment to 41-51 months' imprisonment. Without the alleged error, then, Perry's sentence represents an upward variance of 20 months from the bottom of Perry's preferred Guidelines range.

Substantive reasonableness requires us to consider "the totality of the circumstances," including the extent of the variance, in order to determine "whether the sentencing court abused its discretion in concluding that the sentence it chose satisfied the standards set forth in § 3553(a)." *Gomez-Jimenez*, 750 F.3d at 383 (cleaned up). "[W]hile we presume that sentences within the advisory Guidelines range are substantively

10

reasonable, even sentences that vary outside the Guidelines range are entitled to due deference." *Id.*

Here, Perry makes no argument that the sentence is substantively unreasonable, instead complaining that the court failed to calculate a Guidelines range absent the alleged error. But failure to calculate the Guidelines range is an issue of procedural reasonableness, *Gall v. United States*, 552 U.S. 38, 53 (2007), and "we have consistently framed our reasonableness inquiry in this type of harmless error review as being focused on *substantive* reasonableness," *United States v. Mills*, 917 F.3d 324, 332 (4th Cir. 2019). Thus, Perry's procedural reasonableness argument is irrelevant.

In any event, we conclude that the 47-month sentence is substantively reasonable. The district court provided a detailed explanation of the applicable § 3553(a) factors motivating its chosen sentence, focusing primarily on the danger caused by the offense, including Perry's "driving to the terror of the public and fleeing and wrecking into somebody and injuring them" while carrying a "weapon endangering everybody out there." J.A. 82–83. The court also noted Perry's personal characteristics, family, and violent criminal history. Finally, the court explained that the sentence would promote deterrence and respect for the law, avoid sentencing disparities, and "protect the public from further crimes of this defendant." J.A. 84. In sum, we're satisfied that the court acted well within its discretion when it determined that the applicable sentencing factors warranted a 47-month term of imprisonment, regardless of the alleged error.

11

* * *

For the reasons given, we affirm the district court's judgment. We dispense with oral argument because the facts and legal contentions are adequately presented in the materials before this court and argument would not aid the decisional process.

*AFFIRMED*